470 P.2d 300

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Gerald W. ALBERTSON, Defendant-Respondent.**

No. 10520.

Supreme Court of Idaho.

May 18, 1970.

Rehearing Denied June 22, 1970.

Robert M. Robson, Atty. Gen., Martin R. Ward, Asst. Atty. Gen., and Ellison M. Matthews, Pros. Atty., Ada County, Boise, for appellant.

E. Don Copple, Boise, for respondent.

SHEPARD, Justice

This cause presents for decision the constitutionality of our Idaho statute requiring motorcycle riders to wear a helmet while operating a motorcycle upon a public street or highway.

Defendant (respondent here) was charged with and convicted in the Justice Court of Ada County of operating a motorcycle without a safety helmet contrary to the provisions of I.C. § 49–761A. Defendant appealed the conviction to the District Court of the Fourth Judicial District, in and for Ada County. Defendant stipulated both in the Justice Court and in the District Court that he had willfully and intentionally operated a motorcycle upon a public road, on a date certain, while not wearing a protective safety helmet. It was further stipulated in the District Court that the case might be decided by the court on the stipulated facts, waiving any trial. Hence, the only question presented to the district court was the alleged unconstitutionality of I.C. § 49–761A. The district court entered its memorandum decision finding the statute in question unconstitutional "as a violation of substantive due process" and entered an order dismissing the action. This appeal was taken by the State of Idaho. Appeals by the State in criminal cases are governed by I.C. § 19–2804. The respondent herein does not raise the issue of the ability of the State to maintain an appeal. We were favored by no authority, discussion or argument on this point by either party. We therefore treat this particular case as being in effect an appeal by the State from a judgment for a criminal defendant on a demurrer to an information. I.C. § 19–2804.

Obviously, the only question presented in this appeal is the constitutionality of I.C. § 49–761A. Appellant, of course, contends that the district court erred in finding the said statute unconstitutional and suggests that the statute is a valid exercise of the State's police power because it bears a reasonable relationship to the health, welfare or safety of the general public.

Respondent attacks the statute on a number of grounds: first, that the statute denies defendant equal protection of law as proscribed by the Fourteenth Amendment to the United States Constitution; secondly, that the statute is unconstitutional as a violation of substantive due process in that it is an attempted regulation of conduct of individual persons which bears no reasonable relationship to the public at large, and also that the regulation of the department of law enforcement is vague and indefinite; thirdly, respondent argues that the statute is an infringement of fundamental liberty, of his privacy and right to be let alone, as guaranteed by the Ninth Amendment to the United States Constitution.

During the last decade the motorcycle has come to be widely accepted not only as a means of transportation, but as outdoor recreation. During the same years the mounting death toll on the nation's highways has become a cause of concern to the federal government as well as state governments. The sharp increase in ownership and use of motorcycles, coupled with the vulnerability of motorcycle riders, has resulted in particular attention being paid to the motorcycle rider not only by state legislatures, but by the United States Congress. At the present time a great majority of the states have enacted legislation requiring the wearing of a helmet while operating a motorcycle. Such legislation presumably resulted from the enactment of the Highway Safety Act of 1966, 23 U.S.C.A. §§ 401–404 (Supp.1967), which encouraged and almost demanded enactment of protective helmet legislation by the states. 73 Dickinson L.Rev. 100; 30 University of Pittsburgh L.Rev. 421; 30 Ohio State Law Journal 355.

"Deaths and injuries from motorcycle accidents doubled between 1963 and 1965. This fact is particularly alarming when it is understood that most of those killed and injured were young people under the age of 25. Motorcycle registrations have jumped from 574,080 in 1960 to 1,914,700 in 1966. By 1970 the annual increase is expected to reach 1,000,000 per year. Motorcycle safety takes on grave dimensions in view of the fact that since 1960 the rate of motorcycle fatalities has increased at almost the same rate as the number of motorcycles

[i.e., almost three and one-half times in six years.]" [1]

Statistics accumulated by the department of motor vehicles of New York indicate that 89.2 per cent of motorcycle accidents result in injury or death, that almost all fatalities occurring as a result of such accidents involve head injuries, and that most of such fatalities could have been avoided or the severity of a given accident lessened by the use of a proper helmet.[2]

Data accumulated by the Michigan state police shows a mortality rate of 11.5 for every 10,000 registrations of motorcycles as compared with 5.2 per 10,000 for all other vehicles in the same period.[3]

There can be little doubt but that the operation of a motorcycle upon the public highways presents certain dangers and is particularly dangerous as compared with the operation of other types of motor vehicles. In none of the many cases which have dealt with this subject is there any real contention that the wearing of a helmet while operating a motorcycle is not a wise, expedient and salutary course of conduct. In the case at bar respondent, in effect, admits that the dangers of operating a motorcycle are considerably enhanced absent a protective helmet.

We are therefore required to reject respondent's contention that motorcycle operators are being discriminated against as compared with operators of other motor vehicles without a rational basis therefor. We think that the obvious dangers presented more than justify the discrimination as between operators of various types of motor vehicles.

Insofar as respondent's contention that the regulation of the department of law enforcement regarding safety helmet specifications is concerned, it is sufficient to say that the regulation sets forth the types of helmet which must be worn and describes them and the tests which the helmets must sustain in order to be approved in minute detail. Therefore, the regulation is adequate notice for any person to base a course of conduct thereon.

We then come to respondent's prime contention which has been the subject of most discussion in cases involving the same subject matter. In capsule form the position of respondent may be stated as follows: The statute in question and others like it are designed solely and completely to protect the well-being of persons who are operating a motorcycle and bear no relationship whatsoever to the health, safety and welfare of the *general* public. Our sister states of Oregon and Washington have had occasion to pass upon this same question, State v. Fetterly, 456 P.2d 996 (Ore.1969); State v. Laitinen, 459 P.2d 789 (Wash.1969). Both decisions discuss the argument made by respondent herein and both decisions are highly persuasive in the case at bar. Set out in those opinions are the host of cases which have decided precisely the same question in a manner adverse to the contentions of the respondent. A listing of said decisions would serve no purpose herein.

The courts across the nation have adopted various approaches in pointing out that protective helmet statutes are designed to protect the general public's welfare and safety, as well as that of the motorcycle rider. Some have found legislative intention to confer benefits to highway users as a class on the basis that since the motorcycle rider is in an exposed position, he may be struck by flying objects causing loss of control and thereby endangering pedestrians or other motorists; others suggest that such statutes protect motorists who might otherwise become involved in automobile-motorcycle accidents and be charged with negligent homicide; others suggest that since the use of highways is only a condi-

---

1. Report of the Secretary of Transportation, H.R.Document No. 138, 90–1.

2. New York Session Laws, p. 2961 (McKinney 1966).

3. American Motorcycle Association v. Davids, 11 Mich.App. 351, 158 N.W.2d 72 (1968).

tional privilege a helmet requirement may be legitimately imposed; others suggest that helmet laws are simply equipment regulations similar to those requiring other safety devices on other types of motor vehicles; others, such as the court in Washington, suggest that the public expense of providing emergency ambulance, medical and hospital care for persons injured upon the public highways justify the initiation of measures by the legislature to reduce such burdens upon the general public; others suggest that a disabling head injury usually results in the diminished ability of an individual to support himself and the possibility of another addition to the already overloaded public welfare rolls; still others cite the probability of increased insurance rates.

Whatever approach other courts have taken by way of holding their statutes of this same type constitutional, the authority is overwhelming and the reasons therefor many and varied. There can be no doubt that certain interests of the general public in its welfare and safety are served by statutes of the type presented herein. We believe that the general traveling public is benefited as a class in that the protective helmet reduces to some extent the possibility of a motorcycle rider losing control of his vehicle and endangering other highway users. It further reduces the need for and therefore the costs of providing police, ambulance and other emergency personnel and equipment at accident scenes. While the interest of the general public may be secondary as compared with the importance of wearing a helmet to the motorcycle rider, those rights of the general public are nevertheless real, ascertainable, and needful of protection. In such cases the right of the individual as asserted by the respondent to "be let alone" must be considered subservient to the real necessities of protection of the general public. As was well said in Bisenius v. Karns, 42 Wis.2d 42, 165 N.W.2d 377 (1969), in dealing with the same argument as made herein,

> "There is no place where any such right to be let alone would be less assertable than on a modern highway with cars, trucks, busses, and cycles whizzing by at sixty or seventy miles an hour. When one ventures onto such a highway, he must be expected and required to conform to public safety regulations and controls, including some that would neither have been necessary nor reasonable in the era of horse-drawn vehicles.",

all of which is only perhaps another way of saying that the ability to "do one's own thing" depends on the time, place and circumstances.

The court in State v. Laitinen, supra, stated:

> "The legislature could also reasonably assume—and legislate on such assumption—that the public welfare and safety is substantially affected by the dangers arising from motorcycle riding."

We conclude that the legislature, in passing the questioned statute, created no unconstitutional imbalance between the personal liberty of the individual and the interests of society in general.

The decision of the district court ruling I.C. § 49–761A unconstitutional is reversed and the case remanded for such further proceedings as may be appropriate.

McFADDEN, C. J., and McQUADE, DONALDSON and SPEAR, JJ., concur.