JAMES A. PENNEY v. CITY OF
NORTH LITTLE ROCK

5-5507 455 S. W. 2d 132

Opinion delivered June 22, 1970

*Harold Hall,* for appellant.

*John Harmon* and *Larry Wallace,* for appellee.

J. FRED JONES, Justice. James A. Penney was convicted in the North Little Rock Municipal Court and fined $25 for failure to wear protective headgear while operating a motorcycle in violation of § 3 of Act 201 of 1959, as amended by Act 296 of 1967 (Ark. Stat. Ann. § 75-1703 [Supp. 1969]). On appeal to the Pulaski County Circuit Court, Penney was again convicted and on appeal to this court he relies on the following point for reversal:

"The Court erred in refusing to grant the defendant's Motion to dismiss on the grounds that the Act under which he was charged was unconstitutional."

Act 296, approved March 10, 1967 (§ 75-1703, supra) provides, in part, as follows:

"From and after the effective date of this Act, all riders used upon the public streets and highways of this State and passengers of motor driven cycles and motorcycles shall be equipped with the following equipment under standards set forth by the department of motor vehicles for the State of Arkansas:

(a) Protective headgear,

(b) Protective glasses, goggles or transparent face shields."

We take judicial notice of Motor Vehicle Division regulation No. 1967-3 promulgated under authority of Act 296 of 1967, supra, which sets forth standards for the equipment required under the Act. The sole question presented on this appeal is whether the Act under which Penney was convicted is constitutional, and we hold that it is.

The appellant contends that the Act involved is unconstitutional "in that it is · beyond the police power of the legislature. The Act was passed for the protection of the rider himself and not the general public." The appellant insists that the Act is unconstitutional and urges us in so holding, to adopt the views of the Michigan, Ohio, New York and Louisiana courts as announced in the following cases: By Michigan in *American Motorcycle Association* v. *Davids*, 158 N. W. 2d 72; by Ohio in *State* v. *Betts*, 252 N. E. 2d 866; by New York in *People* v. *Carmichael*, 279 N. Y. S. 2d 272, 53 Misc. 2d 584, and by the Court of Appeals of Louisiana as announced in *Everhardt* v. *City of New Orleans*, 208 So. 2d 423.

We are of the opinion that the better reasoning favors the courts who have held similar statutes constitutional and we feel more comfortable aligned with the final decision of the New York court in *People* v. *Carmichael*, as announced in 288 N. Y. S. 2d 931, and the final Louisiana Supreme Court decision in *Everhardt* v. *City of New Orleans*, as announced in 217 So. 2d 400. In reversing the Special Sessions Court in *Carmichael*, the Genesee County Court in 288 N. Y. S. 2d 931, said:

". . . While concededly the instant legislation may infringe on the rights of the individual, it is equally apparent that such is incidental to a valid exercise of the police power and is not unreasonable. * * * The use of protective helmets is an

accepted and widely used safety device in our so-
ciety. A standard by its nature may be a general
one and nonetheless valid if it is capable of reason-
able application under the circumstances."

The Supreme Court of Louisiana in the final dis-
position of the *Everhardt* case, reversed the Fourth Cir-
cuit Court of Appeals and held that the Louisiana
statute was constitutional. The Fourth Circuit Court
of Appeals in *Everhardt*, as reported in 208 So. 2d 423,
found the *Carmichael* decision as announced by the
Special Sessions Court for the Town of Oakfield in
New York, persuasive and proceeded to follow it. It is
interesting to note that by the time *Everhardt* was
finally decided and reversed by the Supreme Court of
Louisiana, the New York Special Sessions Court in
*People* v. *Carmichael* had also been reversed and the
New York statute held to be constitutional.

In the Texas case of *Ex Parte Smith,* 441 S. W. 2d
544, the constitutionality of a similar statute was in-
volved and the defendant-appellee also relied on the
earlier New York and Louisiana decisions in *Carmichael*
and *Everhardt,* but the Texas Court of Criminal
Appeals aligned itself with the later and final decisions
in *Carmichael* and *Everhardt,* as well as with the de-
cisions from a number of other states in holding similar
statutes constitutional.

The protective headgear statutes appear very similar
in all the states where they have been adopted, and in
a majority of such states, where the constitutionality
of the Act has been questioned, the courts have held
the Acts are constitutional. Kentucky seems to be the
most recent state to join the majority in holding a
similar statute constitutional. In the case of *Common-
wealth of Kentucky* v. *Coffman,* rendered on May 1,
1970, and not yet reported in printed form, it is pointed
out that the Kentucky statute requires that all persons
operating or riding motorcycles are required to wear
protective helmets of the type approved by the com-
missioner of public safety. In aligning Kentucky with

the majority view, the Supreme Court of Kentucky said:

". . . [O]nly two states, Illinois and Michigan, have declared acts similar to the one here in question to be unconstitutional. See *People* v. *Fries,* Ill., 250 N. E. 2d 149, and *American Motorcycle Association* v. *Davids,* Mich., 158 N. W. 2d 72.

At least thirteen other states have upheld the constitutionality of similar acts. In *Bisenius* v. *Karns,* Wis., 165 N. W. 2d 377, the Wisconsin Supreme Court in a well-reasoned opinion upheld the constitutionality of a similar act. This case went to the Supreme Court of the United States where the appeal was dismissed 'for want of a substantial federal question.' 395 U. S. 709, 89 S. Ct. 2033 (1969).

Among other states that have upheld statutes requiring motorcycle operators and riders to wear protective headgear are North Carolina, Louisiana, Rhode Island, Massachusetts, North Dakota, Vermont, Missouri, Florida, Washington, Oregon, and Connecticut. See *Everhardt* v. *City of New Orleans,* 217 So. 2d 400 (La., 1968); *State ex rel. Colvin* v. *Lombardi,* 241 A. 2d 625, (R. I., 1968); *Commonwealth* v. *Howie,* 238 N. E. 2d 373 (Mass., 1968) cert. den. 393 U. S. 999, 89 S. Ct. 485; *State* v. *Odegaard,* 165 N. W. 2d 677 (N. D., 1969); *State* v. *Colomon,* 260 A. 2d 377 (Vt., 1969); *State* v. *Darrah,* 446 S. W. 2d 745 (Mo., 1969); *State* v. *Eitel,* 227 So. 2d 489 (Fla., 1969); *State* v. *Laitinen,* 459 P. 2d 789 (Wash., 1969); *State* v. *Fetterly,* 456 P. 2d 996 (Oreg., 1969); *State* v. *Burzychi,* 252 A. 2d 312 (Conn., 1969).

Since the Missouri court decided *State* v. *Darrah, supra,* it had occasion on March 9, 1970, to again decide a case involving the identical questions raised in the present case in *State* v. *Cushman,* Mo., 451 S. W. 2d 17, to which we refer the reader

for a more detailed reason for the results herein reached.

> . . . in the narrow scope in which the safety device is here presented, we have no hesitancy in holding that the statute in question has a real and substantial relation to the public welfare and is therefore constitutional."

We join, the decisions of what appears to be by far the great majority of the courts of the other states, in holding that § 3 of Act 201 of 1959, as amended by Act 296 of 1967, is a proper exercise of the police powers of the state of Arkansas and is constitutional. In doing so we are unable to find better expressed reasons than has been given in the various cases, supra, but we consider the reasoning, as expressed by the New Jersey court in *State* v. *Mele*, 247 A. 2d 176, to be very much in keeping with our own view in the case at bar. In that case the New Jersey court said:

> ". . . At first glance, a requirement of protective headgear seems aimed only at protection of the individual. However, serious thought indicates otherwise. The general public has a right to be protected from the accidents which might result from a blow on the head received from objects kicked up from the highway. The blow, however slight, might be just enough to distract a motorcyclist and cause him to lose control and become a menace to other vehicles or pedestrians on the highway."

We also approve the language used by the Supreme Court of North Carolina in the case of *State* v. *Anderson*, 164 S. E. 2d 48, where, in holding constitutional a statute almost identical with our own, the North Carolina Court said:

> "Death on the highway can no longer be considered as a personal and individual tragedy alone. The mounting carnage has long since reached propor-

tions of a public disaster. Legislation reasonably designed to reduce the toll may for that reason alone be sufficiently imbued with the public interests to meet the constitutional test required for a valid exercise of the State's police power. However, it is not necessary to invoke so broad a premise in order to find the statute here attached to be constitutional."

We, therefore, hold that since the statute in question bears a reasonable, real and substantial relation to the public health, safety and welfare, it is constitutional as a valid exercise of the police power of the state of Arkansas. Therefore, since the facts are not in dispute, the judgment of the circuit court must be affirmed.

Affirmed.