EUGENE L. ROBOTHAM, ON BEHALF OF HIMSELF AND AS PARENT
AND NEXT FRIEND OF MARK LEE ROBOTHAM, A MINOR CHILD,
APPELLANT, V. STATE OF NEBRASKA ET AL., APPELLEES.
488 N.W.2d 533

Filed September 4, 1992. No. S-89-811.

Charles F. Noren and W. Travis Burney for appellant.

Robert M. Spire, Attorney General, Charles E. Lowe, and David Edward Cygan for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

HASTINGS, C.J.

Eugene L. Robotham, individually and as parent and next friend of Mark Lee Robotham, his 5-year-old son, brought this action against the State of Nebraska and various officials thereof. Robotham sought a declaration that 1988 Neb. Laws, L.B. 428, was unconstitutional in several respects, and also sought related injunctive relief. The district court found in favor of the State and dismissed Robotham's petition. Robotham now appeals.

An action to declare a statute unconstitutional "is more akin to relief through an equity action than to relief through a law action." *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 657, 477 N.W.2d 577, 581 (1991). " 'In an appeal of an equity action, this court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court . . . .' " *Id*. Where a declaratory judgment action presents questions of law, this court " 'has an obligation to reach its conclusion independent from the conclusion reached by the trial court' " with regard to these questions as well. *State Bd. of Ag. v. State Racing Comm.*, 239 Neb. 762, 767, 478 N.W.2d 270, 273 (1992).

Robotham is a licensed motorcycle operator, a motorcycle owner, and, by his own description, a "frequent" motorcycle rider. Robotham owns a motorcycle helmet, which he does not wear while riding. Mark Lee Robotham is occasionally a passenger on his father's motorcycle. Robotham has made no attempt to find a helmet to fit his son.

In 1988, the Legislature passed L.B. 428, which is now codified at Neb. Rev. Stat. §§ 39-6,210 to 39-6,214 (Reissue 1988) and Neb. Rev. Stat. § 39-669.26(13) (Reissue 1988) (hereinafter the "helmet law"). The helmet law requires any motorcycle or moped operator or passenger on Nebraska's highways after January 1, 1989, to wear a "protective helmet." § 39-6,211. The helmet law requires the Nebraska Department of Motor Vehicles to publish a noninclusive list of helmets "which meet the requirements of section 39-6,211." § 39-6,212.

The helmet law further provides that "[a]ny person using a protective helmet purchased prior to July 9, 1988, which is labeled to show that it conforms with applicable federal motor vehicle safety standards shall be deemed to be in compliance with section 39-6,211." § 39-6,213. Those persons violating the helmet law "shall be fined fifty dollars." § 39-6,214. "[M]otorcycle or moped protective helmet violations" are not included within the driver's license point system established elsewhere in the rules of the road. § 39-669.26(13).

Robotham's petition alleged several deficiencies in the helmet law under both the U.S. and Nebraska Constitutions: (1) that the helmet law is vague; (2) that the helmet law "deprives Plaintiffs of liberty in the form of their constitutional right to be let alone;" (3) that the helmet law works a taking without just compensation in that it requires Robotham to pay money for a helmet; (4) that the helmet law denies Robotham equal protection of the laws; and (5) that the helmet law improperly delegates legislative authority to the Department of Motor Vehicles. The parties filed cross-motions for partial summary judgment as to all claims except vagueness. The district court granted partial summary judgment in favor of the State. Following a full hearing, the court dismissed the vagueness claim as well, with an additional finding that the helmet law in its entirety was constitutional.

Robotham's first two assignments of error are that the district court erred in finding that the helmet law did not violate due process of law or equal protection. In any challenge to a statute under either the Due Process Clause or the Equal Protection Clause, the degree of judicial scrutiny to be focused on the statute is a "dispositive question." *Dallas v. Stanglin*, 490 U.S. 19, 23, 109 S. Ct. 1591, 104 L. Ed. 2d 18 (1989). See *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 319, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976) (Marshall, J., dissenting) (since "[i]f a statute is subject to strict scrutiny, the statute always, or nearly always . . . is struck down[,] the only critical decision is whether strict scrutiny should be invoked at all"). Robotham argues that a " 'compelling' " state interest is necessary to justify the statute. Brief for appellant at 22. This is the standard of strict scrutiny. However, "[u]nless laws 'create

suspect classifications or impinge upon constitutionally protected rights,' . . . it need only be shown that they bear 'some rational relationship to a legitimate state purpose.' " (Citations omitted.) *Stanglin,* 490 U.S. at 23. See, *San Antonio School District v. Rodriguez,* 411 U.S. 1, 17, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973) (court deciding constitutionality of a statute "must decide, first, whether the [statute in question] operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny"); *State v. Two IGT Video Poker Games,* 237 Neb. 145, 149, 465 N.W.2d 453, 458 (1991) (under the due process clause of the Nebraska Constitution, "[w]hen a fundamental right or suspect classification is not involved in legislation, the legislative act is a valid exercise of the police power if the act is rationally related to a legitimate governmental purpose"); *State ex rel. Spire v. Northwestern Bell Tel. Co.,* 233 Neb. 262, 445 N.W.2d 284 (1989).

The threshold questions in addressing Robotham's first two assignments of error are, therefore, (1) whether the helmet law impinges on some fundamental constitutional right, and (2) whether the helmet law creates a suspect classification. If the helmet law implicates neither fundamental rights nor suspect classifications, it must be upheld unless it bears no rational relationship to a legitimate government interest. See, *Stanglin, supra; State v. Two IGT Video Poker Games, supra.*

Robotham advances "the right to be let alone," see *Olmstead v. United States,* 277 U.S. 438, 478, 48 S. Ct. 564, 72 L. Ed. 944 (1928) (Brandeis, J., dissenting), which he also calls a right to privacy, as the fundamental right of which the helmet law deprives him. No doubt privacy is a fundamental right. However, there is no authority which would justify characterizing riding a motorcycle on a public highway without a helmet as conduct protected by the limited scope of the constitutional right to privacy.

The constitutional right to privacy—first enunciated as such in *Griswold v. Connecticut,* 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965)—pertains only to "matters relating to marriage, procreation, contraception, family relationships,

and child rearing and education." *Paul v. Davis*, 424 U.S. 693, 713, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). Accord *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65, 93 S. Ct. 2628, 37 L. Ed. 2d 446 (1973) ("[t]his privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing"). See, *Loving v. Virginia*, 388 U.S. 1, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967) (right to privacy extends to marriage); *Webster v. Reproductive Health Services*, 492 U.S. 490, 109 S. Ct. 3040, 106 L. Ed. 2d 410 (1989) (procreation); *Moore v. East Cleveland*, 431 U.S. 494, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1977) (family); *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923) (child rearing and education). No Nebraska case recognizes a right to privacy, based on our Constitution, broader than the narrow federal constitutional right. See *Schoneweis v. Dando*, 231 Neb. 180, 184, 435 N.W.2d 666, 669 (1989) (right to privacy under Nebraska law is provided exclusively by statute).

The narrow confines of the right to privacy are nowhere better illustrated than in those cases in which the Supreme Court has refused to invoke it. See, *Bowers v. Hardwick*, 478 U.S. 186, 106 S. Ct. 2841, 92 L. Ed. 2d 140 (1986) (right to privacy does not encompass consensual private homosexual sexual activity); *Paris Adult Theatre I v. Slaton, supra* (right to privacy does not encompass watching obscene films in a public theater); *Paul v. Davis, supra* (right to privacy does not protect reputation). The conduct excluded from the scope of privacy protection by these cases is far more "private" than is riding a motorcycle on a public highway.

Put another way, if the right to privacy does not encompass the type of sexual relationships consenting adults have in the privacy of their own homes, *Bowers v. Hardwick, supra*; the type of movies a person may watch, *Paris Adult Theatre I v. Slaton, supra*; or the interest a person has in his or her own good name, *Paul v. Davis, supra*; then it surely does not encompass bareheaded motorcycle riding on a public highway. "There is no place where any such right to be let alone would be less assertible than on a modern highway with cars, trucks, busses and cycles whizzing by at sixty or seventy miles an hour." *Bisenius v. Karns*, 42 Wis. 2d 42, 55, 165 N.W.2d 377, 384

(1969), *appeal dismissed* 395 U.S. 709, 89 S. Ct. 2033, 23 L. Ed. 2d 655. Accord, *Picou v. Gillum*, 874 F.2d 1519 (11th Cir. 1989); *State v. District Court*, 101 Nev. 658, 708 P.2d 1022 (1985); *State v. Albertson*, 93 Idaho 640, 470 P.2d 300 (1970); *State v. Cushman*, 451 S.W.2d 17 (Mo. 1970); *State v. Fetterly*, 254 Or. 47, 456 P.2d 996 (1969).

The right to privacy is not implicated by the helmet law. We may therefore consider the constitutionality of the helmet law under a "rational relationship" analysis unless the helmet law creates some suspect classification.

Where a statute is challenged under the Equal Protection Clause, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). There are two narrow exceptions to this rule. Statutes which classify by race, alienage, or national origin "will be sustained only if they are suitably tailored to serve a compelling state interest." *Id*. Likewise, statutes which classify by gender or illegitimacy must be "substantially related" to, respectively, either "a sufficiently important governmental interest" or "a legitimate state interest." 473 U.S. at 441. In short, "where individuals in the group affected by a law have distinguishing characteristics relevant to interests the State has the authority to implement, . . . the Equal Protection Clause requires only a rational means to serve a legitimate end." 473 U.S. at 441-42.

The Nebraska Constitution has identical requirements. In an equal protection challenge under Neb. Const. art. III, § 18, "classifications that do not involve a suspect class or fundamental right are tested for rational basis." *Haman v. Marsh*, 237 Neb. 699, 712, 467 N.W.2d 836, 846 (1991).

Motorcycle ridership is not a classification of race, alienage, or national origin. Therefore, a compelling state interest is not necessary to sustain the helmet law's validity. Nor is motorcycle ridership a classification based upon gender or illegitimacy. A substantial relation to an important or legitimate government interest is therefore not necessary to save the helmet law from Robotham's attack. Motorcycle riders as a group "have

distinguishing characteristics relevant to interests the State has the authority to implement," in that they employ a dangerous mode of transportation on public highways. See *State v. District Court*, 101 Nev. at 661-62, 708 P.2d at 1024 ("[t]he mandatory helmet law is not based on any invidious discrimination such as race, alienage, or religion. Nor is a fundamental right involved"). Therefore, "the Equal Protection Clause requires only a rational means to serve a legitimate end." *Cleburne*, 473 U.S. at 442.

Since the helmet law implicates neither a fundamental right nor a suspect classification, we evaluate Robotham's first two assigned errors by determining whether the law is a rational means to a legitimate end. The statement of purpose in § 1 of L.B. 428 makes clear the ends the Legislature sought to achieve:

> The Legislature hereby finds and declares that head injuries that occur to motorcyclists and moped operators which could be prevented or lessened by the wearing of helmets are a societal problem and that the financial and emotional costs of such injuries cannot be viewed solely on a personal level. It is the intent of the Legislature to prevent injuries and fatalities which occur due to motorcycle and moped accidents and to prevent the subsequent damage to society which results due to the cost of caring for injured people, the pain and suffering which accompanies such injuries and fatalities, and the loss of productive members of society from such injuries.

The Legislature also considered the differences, in potential for injury, between motorcycle accidents and automobile accidents. See Floor Debate, 90th Leg., 2d Sess. 6830-31 (Jan. 7, 1988) (remarks of Senator Nelson: "The severe trauma that follows [motorcycle] accidents, in many cases, is far more severe than what we would find with our common automobile accidents").

The basic premise of Robotham's constitutional attacks is that "[p]ersonal decision making concerning whether or not to wear a protective helmet . . . has no direct impact on anyone except plaintiffs." Brief for appellant at 15. However, the Legislature expressly found that injuries which could be prevented by helmets "are a societal problem and that the

financial and emotional costs of such injuries cannot be viewed solely on a personal level." § 39-6,210.

> From the moment of the injury, society picks the person up off the highway; delivers him to a municipal hospital and municipal doctors; provides him with unemployment compensation if, after recovery, he cannot replace his lost job, and, if the injury causes permanent disability, may assume the responsibility for his and his family's continued subsistence.

*Simon v. Sargent*, 346 F. Supp. 277, 279 (D. Mass. 1972), *aff'd* 409 U.S. 1020, 93 S. Ct. 463, 34 L. Ed. 2d 312 (mem.). Motorcycle helmets also help to prevent accidents by lessening the likelihood that the cyclist will lose control of the cycle after a blow to the head. *Bisenius v. Karns*, 42 Wis. 2d 42, 165 N.W.2d 377 (1969), *appeal dismissed* 395 U.S. 709, 89 S. Ct. 2033, 23 L. Ed. 2d 655; *Everhardt v. City of New Orleans*, 253 La. 285, 217 So. 2d 400 (1968), *appeal dismissed* 395 U.S. 212, 89 S. Ct. 1775, 23 L. Ed. 2d 214 (1969). Moreover, "all users of a highway have . . . a definite interest in how serious are the consequences, not only to themselves but to others, of any accident in which they may become involved," *Bisenius v. Karns*, 42 Wis. 2d at 50, 165 N.W.2d at 381, if for no other reason than that some states, such as Nebraska, are comparative negligence states, see Neb. Rev. Stat. §§ 25-21,185.01 to 25-21,185.06 (Supp. 1991).

Other state appellate courts have also rejected the claim that mandatory helmet laws affect only the private interests of motorcycle riders, and have advanced a number of public interests protected: (1) the prevention of accidents caused by motorcyclists being struck in the head by debris, *State v. Cotton*, 55 Haw. 138, 516 P.2d 709 (1973); *Kingery v. Chapple*, 504 P.2d 831 (Alaska 1972); *State v. Beeman*, 25 Ariz. App. 83, 541 P.2d 409 (1975); *Penney v. City of North Little Rock*, 248 Ark. 1158, 455 S.W.2d 132 (1970); *Love v. Bell*, 171 Colo. 27, 465 P.2d 118 (1970); *State v. Albertson*, 93 Idaho 640, 470 P.2d 300 (1970); *City of Wichita v. White*, 205 Kan. 408, 469 P.2d 287 (1970); and *State v. Quinnam*, 367 A.2d 1032 (Me. 1977); (2) the minimization of public expenditures for the care and welfare of seriously injured motorcyclists, *State v. Cotton*,

*supra*; *State v. Beeman, supra*; *Love v. Bell, supra*; *State v. Brady*, 290 A.2d 322 (Del. Super. 1972); *State v. Eitel*, 227 So. 2d 489 (Fla. 1969); *State v. Albertson, supra*; and *State v. Edwards*, 287 Minn. 83, 177 N.W.2d 40 (1970); and (3) the impact on society—both financial and humanitarian—from the otherwise preventable loss of productive members, *People v Poucher*, 398 Mich. 316, 247 N.W.2d 798 (1976); *Penney v. City of North Little Rock, supra*; and *State v. Cotton, supra*.

The Legislature considered all three of these justifications in enacting the helmet law. See, Transportation Committee Hearing, L.B. 428, 90th Leg., 1st Sess. 3 (Feb. 24, 1987) (remarks of Senator Lynch, introducer: "We should also, when necessary, impose some form of control when misery and unnecessary cost to others is imposed upon society"); *id*. at 8 (unfair to taxpayers to pay medical costs which could be averted with use of helmet); *id*. at 9-11 (economic cost to society of loss of productive members); *id*. at 19 (cost-benefit analysis would support helmet law); Floor Debate, 90th Leg., 2d Sess. 6828 (Jan. 7, 1988) (remarks of Senator Wesely: motorcycle injuries and fatalities affect family members of killed or injured motorcyclists and affect society through increased insurance and medical costs); *id*. at 6829 (remarks of Senator Lynch: helmet law would save taxpayers between $7 and $11 million); *id*. at 6830 (remarks of Senator Hefner: "[I]f we can save lives, if we can save tax dollars, well then I think it is our responsibility to pass this law"); *id*. at 6831 (remarks of Senator Nelson: cost of motorcycle injuries is borne largely by taxpayers, as 75 to 90 percent of victims are uninsured); *id*. at 6846-47 (remarks of Senator Lynch: large proportion of motorcycle riders are underinsured or uninsured). The helmet law is rationally related to the Legislature's goals in the same way that similar legislation upheld by other courts was related to legislative goals.

Moreover, differences between motorcycle riders as a class and other highway users justify the disparate treatment Robotham claims the helmet law imposes upon motorcyclists, as opposed to other motorists. "There are differences in the physical characteristics of automobiles and motorcycles. Differences in the handling and operation of motorcycles

require different skills and produce different consequences should an accident occur." *State v. District Court*, 101 Nev. 658, 662, 708 P.2d 1022, 1025 (1985). "[A] motorcycle provides much less protection and stability for its operator than an enclosed four-wheeled motor vehicle[,] and . . . the speed and power capability of a motorcycle is far greater than that of an unmotorized bicycle." *State v. Quinnam*, 367 A.2d at 1033. "The motorcycle driver is in a particularly exposed position without a windshield to protect him, and a two-wheeled vehicle is necessarily less stable than a motor vehicle with four wheels." *Love v. Bell*, 171 Colo. at 36, 465 P.2d at 123. "The operator of a motorcycle has considerably less body protection than operators of enclosed vehicles and is more susceptible to be injured and cause other injuries." *Everhardt v. City of New Orleans*, 253 La. 285, 294, 217 So. 2d 400, 403 (1968), *appeal dismissed* 395 U.S. 212, 89 S. Ct. 1775, 23 L. Ed. 2d 214 (1969).

The protection of motorcycle riders from serious injury and the concomitant protection of society from the repercussions of such injuries is a legitimate legislative aim. The sole question remaining is whether the helmet law is rationally related to these aims.

In *Simon v. Sargent*, 346 F.Supp. 277 (D. Mass. 1972), *aff'd* 409 U.S. 1020, 93 S. Ct. 463, 34 L. Ed. 2d 312 (mem.); *Bisenius v. Karns*, 42 Wis.2d 42, 165 N.W.2d 377 (1969), *appeal dismissed* 395 U.S. 709, 89 S. Ct. 2033, 23 L. Ed. 2d 655; and *Everhardt v. City of New Orleans, supra*, the U.S. Supreme Court summarily considered the very same constitutional challenge to mandatory helmet legislation that Robotham raises here. Summary dispositions by the Supreme Court are binding constitutional authority: "[T]he lower courts are bound by summary decisions by this Court ' "until such time as the Court informs [them] that [they] are not." ' " *Hicks v. Miranda*, 422 U.S. 332, 344-45, 95 S. Ct. 2281, 45 L. Ed. 2d 223 (1975). See, *R. J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130, 107 S. Ct. 499, 93 L. Ed. 2d 449 (1986); 28 U.S.C.A. § 1257 (West 1988), Commentary on 1988 Revision ("[u]nlike a denial of certiorari, which the Court has made clear is not to be taken as any kind of approval of the result reached below on the merits, a summary affirmance of an appealed

case, or its dismissal for want of a substantial federal question . . . is . . . a decision approving the merits"). Therefore, since in each of these cases the court found that a mandatory helmet law is a reasonable exercise of legislative power, the Supreme Court's summary dispositions confirm that position.

The ends of protecting society from the extra economic costs incurred because of injuries to motorcycle riders, and of preventing the other impacts on society of unnecessarily severe motorcycle accidents, are permissible goals for legislation. The helmet law is a rational means to those ends. Therefore, the helmet law violates neither due process nor equal protection under either the Nebraska Constitution or the federal Constitution.

Robotham's next assignment of error is that the district court erred in finding that the helmet law is not unconstitutionally vague. Before addressing Robotham's vagueness claims, we must first address the effect of federal law upon the helmet law.

The federal Department of Transportation has, pursuant to the direction of Congress, promulgated regulations governing "all helmets designed for use by motorcyclists and other motor vehicle users." 49 C.F.R. § 571.218, S3 (1991). See 15 U.S.C. § 1381 et seq. (1988). Congress intended that the federal standards for motorcycle helmets supersede any state standards which are not identical. See 15 U.S.C. § 1392(d) ("[w]henever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard"). A state may promulgate and enforce motorcycle helmet standards only if the state standards are identical to those promulgated by the Department of Transportation. *Id.*

Federal law, so long as it is promulgated within Congress' constitutionally enumerated powers, "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. The clear mandate of the Supremacy Clause is that "the Judges in every State shall be bound" by federal law, "any Thing in the Constitution or

Laws of any State to the Contrary notwithstanding." *Id.* See, *Chisom v. Roemer*, ____ U.S. ____, 111 S. Ct. 2354, 115 L. Ed. 2d 348 (1991) (election system mandated by state constitution held invalid under federal Voting Rights Act of 1965, 42 U.S.C. §§ 1971, 1973 et seq. (1988), and Supremacy Clause); *Dietz v. State of Ark.*, 709 F. Supp. 902 (E.D. Ark. 1989) (amendments to state constitution purporting to repudiate U.S. Supreme Court's desegregation decisions held invalid under those decisions and Supremacy Clause). Therefore, since Congress declared its intent that federal motorcycle helmet regulations supersede any inconsistent state regulations, it is necessary to read the helmet law as limited by the federal regulations.

Federal law neither requires the state to mandate nor prohibits the state from mandating the use of helmets—"it merely sets standards for 'helmets designed for use by motorcyclists . . . .' " *Com. v. Guest*, 12 Mass. App. 941, 425 N.E.2d 779, 780 (1981) (quoting 49 C.F.R. § 571.218). The Supremacy Clause requires only that the helmet law be consistent with the federal regulations as to the performance and safety requirements for motorcycle helmets themselves. We must therefore compare the substantive requirements of the helmet law to those of 49 C.F.R. § 571.218 to determine whether there are any inconsistencies.

The helmet law requires a "protective helmet of the type and design manufactured for use by operators of [motorcycles and mopeds]," which must be "secured properly on [the rider's] head with a chin strap while the vehicle is in motion." § 39-6,211. This helmet must "be designed to reduce injuries to the user resulting from head impacts and shall be designed to protect the user by remaining on the user's head, deflecting blows, resisting penetration, and spreading the force of impact." *Id.* The helmet must "consist of lining, padding, visor, and chin strap." *Id.* The federal regulations require helmets to meet certain standards with regard to impact attenuation, protection against penetration, and retention systems, and outline testing conditions and procedures to be used. 49 C.F.R. § 571.218, S5-7.

The helmet law differs from the federal regulations only in

that it requires helmets to have a chinstrap and a visor. The chinstrap requirement of the helmet law is the equivalent of the "retention system" required by the federal regulations. Compare § 39-6,211 with 49 C.F.R. § 571.218, S5.3. However, there is no federal counterpart to the visor required by the helmet law. Therefore, the helmet law fails under the Supremacy Clause unless the visor requirement can be severed. See 15 U.S.C. § 1392(d); 49 C.F.R. § 571.218.

An unconstitutional portion of a statute may be severed if (1) absent the unconstitutional portion, a workable statutory scheme remains; (2) the valid portions of the statute can be enforced independently; (3) the invalid portion was not an inducement to the passage of the statute; and (4) severing the invalid portion will not do violence to the intent of the Legislature. *State ex rel. Spire v. Strawberries, Inc.*, 239 Neb. 1, 473 N.W.2d 428 (1991). A severability clause, while it indicates that the Legislature contemplated the possible judicial partitioning of the statute and passed it anyway, is not necessary. *Id.*

The helmet law is still a workable statutory scheme even if the visor requirement is deleted. The rest of the helmet law can be enforced with the same ease whether the visor requirement is included or stricken. The legislative history nowhere discusses the visor requirement, making it clear that it was not an inducement to passage. Finally, as discussed at length above, the intent of the Legislature was to prevent head injuries and their attendant social cost. Severing the visor requirement does no violence to that intent. The visor requirement may therefore properly be severed from the rest of the helmet law.

We must therefore determine whether the helmet law, as limited by federal law, is unconstitutionally vague. "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983). Accord *State v. Pierson*, 239 Neb. 350, 353, 476 N.W.2d 544, 547 (1991) ("[a] crime and its elements must be so clearly expressed that an

ordinary person can intelligently choose in advance what course of conduct he may lawfully pursue"). Where a law reaches no constitutionally protected conduct, one challenging the law for vagueness "must demonstrate that the law is impermissibly vague in all of its applications." *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 497, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982). Accord *Midwest Messenger Assn. v. Spire*, 223 Neb. 748, 393 N.W.2d 438 (1986). Moreover, this court must also "consider any limiting construction that [an] enforcement agency has proffered." *Kolender v. Lawson*, 461 U.S. at 355 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, supra*). Such a construction may save an otherwise facially vague statute.

Robotham's claims that the helmet law violates his constitutional rights to due process and equal protection are without merit, and the helmet law therefore reaches no constitutionally protected conduct. Robotham must show that in all its applications, the helmet law is drawn such that ordinary people cannot understand what is prohibited, and such that arbitrary and discriminatory enforcement is encouraged. Furthermore, Robotham must show that regardless of what appears on the face of the statute, no limiting construction has been placed on the law by the enforcement arms of the State which would clarify the law such that it is not vague.

Robotham contends that *Kolender v. Lawson* limits the "vague in all of its applications" stricture to economic legislation and prohibits its application to penal statutes. This contention fails for two reasons. First, *Kolender v. Lawson* involved a statute which *did* reach constitutionally protected conduct and therefore was beyond the scope of the "vague in all of its applications" rule. See *id*. (challenged statute implicated First Amendment liberties and constitutional right to freedom of movement). Second, this court has already considered the question of whether *Kolender v. Lawson* places some limitation on the "vague in all its applications" rule, and has determined that it does not. See *Midwest Messenger Assn. v. Spire, supra.* Robotham is raising an argument identical to the one this court previously rejected.

Furthermore, the helmet law requires the Department of Motor Vehicles to fashion a limiting construction. Section 39-6,212 requires the Department of Motor Vehicles to "publish a list of approved protective helmets which meet the requirements of section 39-6,211." The list, while noninclusive, enumerates helmets which, if worn, bring the wearer into compliance with the helmet law. § 39-6,212. This court must consider the list alongside the text of the statute in evaluating Robotham's vagueness claim. See *Boos v. Barry*, 485 U.S. 312, 329, 108 S. Ct. 1157, 99 L. Ed. 2d 333 (1988) ("we consider the actual text of the statute as well as any limiting constructions that have been developed").

The Department of Motor Vehicles has in fact published a list enumerating 41 models of helmet from 15 different manufacturers. According to the list, these helmets constitute "DOT approved helmets," and, furthermore, "[a]ll Department of Transportation (DOT) approved motorcycle helmets meet the requirements of the Nebraska Helmet Law." Elsewhere, the list states:

> All helmets manufactured after October 3, 1988, must have the "DOT" sticker on the outside back of the helmet. [A drawing showing the "DOT" symbol on a typical helmet appears on the list.] This symbol is the way the manufacturer certifies that the helmet meets the U. S. Department of Transportation's standard for safety helmets. Helmets manufactured prior to October 3, 1988, which are "DOT" approved meet the requirements of Nebraska law. . . . [T]he Department of Transportation's standard is the only one the helmet is required by law to meet.

The list makes it clear what helmets can be worn in order to comply with the helmet law. Taking the list as a limiting construction to be read alongside the helmet law, the law is not vague in all its applications. Put another way, there are at least 41 courses of conduct—the number of helmets on the approved list—which would assure an individual motorcycle rider or passenger that he or she will not be prosecuted. The rider or passenger need simply wear a helmet on the Department of Motor Vehicles' list while riding.

The list acts as a limiting construction of the law by enumerating some of those helmets which meet the allegedly vague criteria of the statute itself. We do not decide whether the actual text of the helmet law, taken alone, is vague. Taken together, the helmet law and the list are not vague.

Under the guise of a vagueness attack, Robotham further argues that the federal regulations at the time the helmet law was enacted did not cover all motorcycle helmets and that therefore the helmet law is vague in its application to helmets falling outside the federal regulatory reach. This argument fails for two reasons.

First, it does not really raise the issue of vagueness. Robotham's attack on the helmet law is not that it is unclear what helmets meet its standards—it is that those helmets do not fit him and his son. While a statute that required motorcyclists to wear helmets of a particular size might have constitutional infirmities—it is difficult to conceive of a legitimate state purpose that is served by, in effect, requiring motorcyclists to have a particular size of head—vagueness is not among them.

Second, in 1988 the federal regulations were amended to include all sizes of helmet. See, 49 C.F.R. § 571.218, S3; Motorcycle Helmet Safety Standards, 53 Fed. Reg. 11,280 (1988). Therefore, the federal regulations in effect at the time of Robotham's suit covered all sizes of motorcycle helmet. Whatever sort of argument Robotham is attempting, the 1988 amendments to 49 C.F.R. § 571.218 render it moot.

Robotham's final assignment of error is that the helmet law improperly delegates legislative authority to the Department of Motor Vehicles, in violation of article III, § 1, of the Nebraska Constitution. The allegedly improper delegation stems from § 39-6,212, which requires the department to make a list of helmets meeting the standards established under the helmet law. Robotham claims that this constitutes a delegation to the department of the authority to define the elements of a crime.

Robotham admits that the list required under § 39-6,212 is to be noninclusive. He therefore implicitly admits that the department is not so much defining what conduct constitutes a crime as it is enumerating—without exclusion—courses of conduct that do *not* constitute a crime. He argues that since the

standards for certification of helmets are technical, and since testing of helmets requires specialized expertise and equipment, the list promulgated by the department is, in effect, inclusive, since ordinary citizens cannot themselves be expected to test helmets which are not on the list.

Robotham ignores the requirement of the federal regulations that manufacturers certify that their helmets comply with the federal standards by applying a permanent label reading "DOT." See 49 C.F.R. § 571.218, S5.6.1(e). Therefore, if, for some unfathomable reason, a person is unable (or unwilling) to buy a helmet on the department's list, he or she can still avoid committing a crime by buying any motorcycle helmet which is labeled "DOT" by the manufacturer. Since the list required by § 39-6,212 is noninclusive, the section does not delegate to the Department of Motor Vehicles the authority to define the essential elements of a crime.

"There is no doubt that the Legislature can delegate to an administrative agency the power to make rules and regulations to implement the policy of a statute." *State ex rel. Spire v. Stodola*, 228 Neb. 107, 109, 421 N.W.2d 436, 438 (1988). Here, the Legislature has done precisely that: § 39-6,212 gives the Department of Motor Vehicles the power to promulgate a regulation—the list—to facilitate the wearing of helmets which comply with the other sections of the helmet law. "In order to be valid, a rule or regulation must be consistent with the statute under which the rule or regulation is promulgated." *Stodola*, 228 Neb. at 110, 421 N.W.2d at 438. Section 39-6,212 does not give the department the power to alter or deviate from the standards found elsewhere in the helmet law, and the list which was actually promulgated does not indicate that the department did so. Robotham's final assignment of error is without merit.

All Robotham's assignments of error are without merit. The helmet law's only constitutional deficiency is that its visor requirement is in direct conflict with supreme federal law. The visor requirement is, however, properly severable from the remainder of the helmet law. We therefore hold that the helmet law is constitutional with the visor requirement severed. The judgment of the district court is affirmed as modified.

AFFIRMED AS MODIFIED.