GERALD D. BRIDGEFORD, APPELLANT, v. U-HAUL COMPANY,
A CORPORATION, ET AL., APPELLEES.

238 N. W. 2d 443

Filed January 29, 1976. No. 40096.

Paul D. Budd and Kutak, Rock, Cohen, Campbell, Garfinkle & Woodward, for appellant.

Michael F. Kinney and Terry J. Grennan of Cassem, Tierney, Adams & Gotsch, for appellee U-Haul Co.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

This appeal involves a constitutional challenge to section 39-6,193, R. R. S. 1943, formerly designated as section 39-7,135, R. R. S. 1943, which reads as follows: "The owner of any leased truck, truck-tractor, whether with or without trailer, or trailer shall be jointly and severally liable with the lessee and the operator thereof for any injury to or the death of any person or persons, or damage to or the destruction of any property resulting from the operation thereof in this state."

In his amended petition, plaintiff, Gerald D. Bridgeford, alleged that on or about January 2, 1973, he was a passenger in a 1962 Buick automobile that was stopped at a stop sign at an intersection, when a 1966 Ford pickup truck, owned and leased by defendant U-Haul Company, struck the rear of the automobile in which plaintiff was a passenger, causing severe injuries to Bridgeford. Plaintiff further alleged that the collision was caused by the specifically enumerated negligent acts of the operator of the Ford pickup truck, defendant, John Doe, true and real name unknown, whose negligence was imputed to defendant U-Haul Company and its lessee by virtue of the provisions of the above-cited statute, and prayed for a joint and several judgment against the defendants. According to statements in U-Haul's brief and oral argument, defendant John Doe, the operator of the leased truck, fled the scene of the collision on foot, and plaintiff has been unable to learn his true identity. In his argument, Bridgeford's counsel also stated the investigation revealed that U-Haul had leased the truck to a person misrepresenting his identity by using the lost or stolen identification papers of another.

In its demurrer to plaintiff's petition, defendant U-Haul alleged that the statute in question was unconstitutional because it deprived the defendant of its property without due process of law in contravention of the Fourteenth Amendment to the Constitution of the United

States and Article I, section 3, of the Constitution of the State of Nebraska; and also because it denied the defendant equal protection of the law under the Fourteenth Amendment to the Constitution of the United States, and Article I, section 1, of the Constitution of the State of Nebraska. Defendant U-Haul also alleged in its demurrer that the statute was never intended to and did not apply to vehicles such as the 1966 Ford pickup truck allegedly involved in the accident. Further, although not set out in the demurrer itself, U-Haul claims in its brief on appeal that the statute is vague, and hence invalid, because the word "truck" is not defined. The District Court sustained the demurrer, and dismissed plaintiff's petition, following his failure to amend his petition within the time allowed. Plaintiff then perfected his appeal to this court. We find that the statute in question is constitutional, reverse the ruling of the trial court, and remand the cause.

It is clear from a reading of U-Haul's brief and from its oral argument before this court that the principal basis for its claim that section 39-6,193 is unconstitutional is that the statute deprives it of its property without due process of law because it fails to limit the imposition of owner-lessor liability to situations where the vehicle is operated with the owner-lessor's knowledge or consent, express or implied. U-Haul claims there is no rational connection between the mere ownership of a leased pickup truck and the imposition of liability on the owner for the acts of someone who is not under the direct control of the owner. It cites as authority for that proposition Daugherty v. Thomas, 174 Mich. 371, 140 N. W. 615 (1913); Frankel v. Cone, 214 Ga. 733, 107 S. E. 2d 819 (1959); and Camp v. Rogers, 44 Conn. 291 (1877). These cases do sustain the general proposition for which they are cited, but we point out that none of the three involved a leased truck. Daugherty and Frankel involve the use of, but not lease of, an automobile, although Camp, decided in 1877, did involve

the letting of a horse and carriage. As hereinafter demonstrated, this factual distinction is important in the determination of the propriety of the Legislature's classification, challenged by U-Haul's equal protection attack.

Section 39-6,193, by its terms, applies only to *leased* trucks. It does not apply to any other type of motor vehicle, leased or otherwise. Although not specifically so restricted by its terms, it is apparent that it was principally intended to apply to commercial enterprises, such as truck-renting businesses. The owner-lessor of the truck is made "jointly and severally liable with the lessee *and* the operator thereof" for injuries, death, or damage resulting from the operation of the truck. (Emphasis supplied.) It does not, however, as pointed out by U-Haul, specifically require that the leased truck be operated at the time of the accident with the consent of the owner, express or implied. There can be no question that by leasing the truck to a lessee, the owner consents to the lessee driving the truck. Royal Indemnity Co. v. Olmstead, 193 F. 2d 451 (Ct. App., 9th Cir., 1951).

Consent is not vitiated by the fact that someone misrepresented his identity when he rented the truck. U-Haul permitted the lessee to take the truck and had the opportunity to satisfy any doubts as to the identity of the lessee. As a California court has said, the name of the car driver is immaterial as the "statute was designed for the protection of the public and places upon the owner of a motor vehicle the responsibility of ascertaining the character, ability and responsibility of the person to whom he intrusts his automobile." Tuderios v. Hertz Drivurself Stations, Inc., 70 Cal. App. 2d 192, 160 P. 2d 554 (1945).

In its brief and argument, U-Haul contends that the statute is overbroad, arguing that under its terms, the owner-lessor would be liable for the negligent acts of a thief who stole the leased truck from the lessee and

was thereafter involved in an accident while driving the truck. As another example, U-Haul claims that the statute would impose liability upon an owner-lessor of the truck whose lessee, either without the knowledge or consent of the owner, or even in direct contravention of the lease agreement or instructions, permits its use by another who negligently causes an accident. In the example of the thief stealing the truck from the lessee, the lessor would not ordinarily be liable under the statute which provides that the owner shall be jointly and severally liable with "the lessee *and* the operator." (Emphasis supplied.) We interpret this language to mean that before liability may be imposed upon the owner under the statute, the lessee must also be legally liable for the negligent operation of the truck, either because of his own driving or by virtue of facts sufficient in law to impose liability upon him because of its negligent operation by another. This leaves, then, the situation suggested by U-Haul that the statute would impose liability upon the owner-lessor of a truck where the lessee permits another to drive the truck, perhaps even in violation of the lease or the lessor's instructions, but under such conditions that in law the negligence of the driver is imputed to the lessee. This situation would seem to be an extension of the rule of the common law, under the principle of respondeat superior. Whether the imposition of such additional liability by action of the Legislature is constitutional is the issue in this case. The answer depends on whether the statute represents a proper exercise of the police power of the state. Statutes which are reasonably designed to protect the public safety, health, morals, and general welfare do not violate the Constitution where the statute operates uniformly on all within a class which is reasonable. Central Markets West, Inc. v. State, 186 Neb. 79, 180 N. W. 2d 880 (1970). In the foregoing case, this court, quoting from Nelsen v. Tilley, 137 Neb. 327, 289 N. W. 388 (1939), stated that: " 'The balance between due

process and the police power is * * * more or less unstable, as it must necessarily keep pace with economic and social orders. As the exercise of the police power increases to meet new conditions, the protection of the due process clauses must necessarily recede to a corresponding degree.' "

Constitutional attacks on similar statutes have, in the past, been phrased and answered both in terms of imputation of negligence and imposition of strict liability. See, Frankel v. Cone, *supra*; Daugherty v. Thomas, *supra*. Since the owner-lessor may be held liable, given the requisite circumstances, even if he has exercised the utmost care, the statute does create, in one sense, a form of strict liability. Prosser, Law of Torts (4th Ed., 1971), § 69, p. 458. In fact vicarious liability is now quite generally recognized as a form of strict liability. Prosser, Law of Torts (4th Ed., 1971), § 81, p. 539. An analysis of the statute, its purposes and constitutionality may be made using both the standards for applying vicarious liability and those for applying strict liability.

The imposition of strict liability, in the exercise of the police power of a state, does not of itself contravene the due process clauses of the federal or state Constitutions. Jones v. Brim, 165 U. S. 180, 17 S. Ct. 282, 41 L. Ed. 677 (1897); St. Louis & S. F. Ry. Co. v. Mathews, 165 U. S. 1, 17 S. Ct. 243, 41 L. Ed. 611 (1897); Sandstrom v. California Horse Racing Board, 31 Cal. 2d 401, 189 P. 2d 17 (1948); 16 Am. Jur. 2d, Constitutional Law, § 296, p. 580. Legislation imposing liability without fault is frequently sustained as a proper exercise of the police power. Jones v. Brim, *supra*; St. Louis & S. F. Ry. Co. v. Mathews, *supra*; 16 Am. Jur. 2d, Constitutional Law, § 327, p. 633. The extent to which the Legislature may exercise the police power, an attribute of state sovereignty, is primarily a matter of legislative judgment, but the purpose of the regulatory matter must be legitimate and the means employed to effect it must be reasonable. Central Markets West, Inc. v. State,

*supra.* Nebraska has, both by legislation and court decision, approved the principles of strict liability and vicarious liability in its workmen's compensation statutes, judicial application of the family purpose doctrine, and defective products cases. Stevens v. Luther, 105 Neb. 184, 180 N. W. 87 (1920); Kohler v. Ford Motor Co., 187 Neb. 428, 191 N. W. 2d 601 (1971); Butera v. J. C. Mardis Co., 99 Neb. 815, 157 N. W. 1024 (1916).

Strict liability like vicarious liability is not a recent or radical development. Before the 19th century, absolute liability was the rule, with a concept of negligence and standard of reasonableness developing in response to an increasingly complex, industrial development. Students of the doctrine of strict liability have pointed out that several features are common to enterprises on which strict liability is imposed. They are: (1) A nonreciprocity of risk, i.e., the party pursuing the regulated activity creates a greater risk to the community than vice versa; (2) the subject activity may be more dangerous or hazardous than usual but has sufficient social utility to be immune to injunction; (3) there may be some difficulties of proof due to the nature of unusual mishaps; and (4) the more financially secure individual is reached, that party being the most able to distribute the costs of the loss involved. This final function, risk spreading, is viewed by some as the main justification for vicarious liability. See, for example Fletcher, Fairness and Utility in Tort Theory, 85 Harv. L. Rev. 537 (1972); Peck, Negligence and Liability Without Fault in Tort Law, 46 Wash. L. Rev. 225 (1971); Vold, Strict Liability for Aircraft Crashes and Forced Landings on Ground Victims Outside of Established Landing Areas, 5 Hast. L. Rev. 1 (1953).

Under the above criteria, the business of leasing trucks may properly be the subject of strict liability legislation. Trucks are generally heavier than automobiles and more difficult for inexperienced drivers to handle, thus creating a greater risk to public safety than other

vehicles. Neither the public at large nor the driver of the vehicle involved in a collision with a leased truck get any substantial benefit from the availability of truck rentals. Proof of what actually happened in a traffic accident may be difficult particularly in view of the fact that long periods of time frequently elapse between the accident and the trial. The rental enterprises involved are usually more able to pay a judgment than the lessee-operator and more able to bear the loss than the victim. The costs of insuring against mishaps becomes a cost of doing business and is passed on to consumers in higher rental fees. In view of the catastrophic nature of car accidents, their frequency, and cost to individuals and society, the financial and physical protection of an innocent party would certainly seem to be within the realm of legislative action in imposing strict liability or in imputing liabilty to the owner-lessor.

Other states have recognized the applicability of the doctrine of strict liability to the rental of vehicles, even without a statute. In Cintrone v. Hertz Truck Leasing & Rental Service, 45 N. J. 434, 212 A. 2d 769 (1965), a case involving the lease of a defective vehicle, the court stated: "We may take judicial notice of the growth of the business of renting of motor vehicles, truck and pleasure cars. * * * The nature of the U-drive-it enterprise is such that a heavy burden of responsibility for the safety of lessees and for members of the public must be imposed upon it. * * * Accordingly, we are of the opinion * * * (2) that the nature of the U-drive-it business is such that the responsibility of Hertz may properly be stated in terms of strict liability in tort." See, also, Martinez v. Nichols Conveyor & Engineering Co., Inc., 243 Cal. App. 2d 795, 52 Cal. Rptr. 842 (1966).

Another theory upon which the application of the doctrine of strict liability is frequently sustained is that of the entrustment of a dangerous instrumentality. Susco Car Rental System of Florida v. Leonard, 112 S. 2d 832 (Fla., 1959).

Authorities are not agreed as to whether or not an automobile or truck is, per se, a dangerous instrumentality. The rule in Nebraska, as set out in Deck v. Sherlock, 162 Neb. 86, 75 N. W. 2d 99 (1956), is that while a motor vehicle is not an inherently dangerous instrumentality, nevertheless, where the owner entrusts the control and operation of it to a person lacking in competency and skill, the vehicle may be considered a dangerous instrumentality. In enacting our statute, the Legislature may well have considered the possibility that by entrusting the truck to a lessee, the owner-lessor should be held strictly liable for the negligence of the driver about whose driving ability he may have no knowledge.

Whether there was a reasonable basis for the enactment of the statute in question is primarily a matter of legislative determination, subject to limited judicial scrutiny. In Nelson v. Tilley, *supra,* this court stated: "Whatever the personal views of this court may be as to the necessity of such legislation, the fact remains that the legislature of the state concluded that a reasonable basis existed for its enactment and, there being some foundation in fact to justify legislative action, this court is powerless to substitute its judgment for that of the legislature even if it cared to do so." Questions of public policy are for the Legislature and not for the courts. Butera v. J. C. Mardis Co., *supra.*

There is no doubt that the state may protect the health, safety, and general welfare of the public by measures directed to increasing highway safety. The Legislature's Banking, Commerce and Insurance Committee in its statement on L.B. 126 in 1957, now section 39-6,193, indicated that the legislation was in part designed to remedy situations where "the results were disasterous to the injured" because no insurance was in force. Besides encouraging adequate insurance coverage, it appears that the bill would also have the effect of making lessors more diligent in checking the abilities and credentials of prospective lessees. L.B. 126 was

clearly within the scope of the state's police power which may subject the right of an owner to unrestricted use of his property to reasonable regulations. Kuester v. State, 191 Neb. 680, 217 N. W. 2d 180 (1974).

We now consider the claim of U-Haul that section 39-6,193 denies it equal protection of the law under both the United States Constitution and the Constitution of the State of Nebraska. It acknowledges that it is proper for the Legislature to classify but argues that section 39-6,193 fails to meet the requirement that the classification rest on some reasonable public policy, some substantial difference of situation or circumstances that would naturally suggest the justice or expediency of diverse legislation with respect to that which is classified. U-Haul argues that section 39-6,193 is too narrow and discriminatory in its coverage because it does not also impose liability on the owners of unleased trucks, and leased and unleased automobiles. An excellent discussion with reference to the problem of classification under the equal protection clause not involving suspect classifications or fundamental rights, is found in Schwartz, Constitutional Law (1972), § 153, p. 289, where that authority states: "Judicial review determines only whether there was a reasonable basis for the particular classification, from the point of view of the legislators who adopted it. The test is whether legislators could in reason have acted upon the classification. A classification having some reasonable basis does not offend merely because it is not made with mathematical nicety. We have to consider not whether the legislator acted with the exactness of a geometric equation, but only whether, though the law bear hard upon some particular class, the class itself is differentiated upon some rational basis. Judicial review of classifications is not exercise in logical abstractions. Legislatures are presumed to have acted within their constitutional power despite the fact that their laws result in some inequal-

ity." See, also, Botsch v. Reisdorff, 193 Neb. 165, 226 N. W. 2d 121 (1975).

A class need not be all-inclusive. As this court has said: "Legislation is to a large extent an evolutionary process, and legislatures often work by piecemeal. Not infrequently they approach a new subject of legislation in a timid and halting spirit, and it often takes years and many sessions to frame legislation covering a whole subject." Freadrich v. State, 89 Neb. 343, 131 N. W. 618 (1911). See, also, Williamson v. Lee Optical of Oklahoma, Inc., 348 U. S. 483, 75 S. Ct. 461, 99 L. Ed. 563 (1955). Courts should be "very cautious in condemning what legislatures have approved" when those enactments are based on legislative judgment resting on practical knowledge of the business concerned. Carroll v. Greenwich Ins. Co., 199 U. S. 401, 26 S. Ct. 66, 50 L. Ed. 246 (1905). "The legislature 'is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.'" West Coast Hotel Co. v. Parrish, 300 U. S. 379, 57 S. Ct. 578, 81 L. Ed. 703 (1937). See, also, Freadrich v. State, *supra*.

As stated in Freadrich: "The classification may be, to some extent, arbitrary in its nature, but it is difficult to draw the line, and there may have been, and no doubt were, reasons appealing to the legislative mind which are not presented here and are not apparent to us, but which may, nevertheless, exist. The court does not sit to review the wisdom of legislative acts. Its only function in this respect is to determine whether it has acted in such a manner as to violate the constitutional provisions."

We think it is clear that the purpose of the Legislature in enacting section 39-6,193 was for the promotion of highway safety and the financial protection of innocent traffic victims. The Legislature may well have felt that the ordinary owner of a nonleased vehicle would be more likely to personally know the person whom he per-

mits to drive the vehicle and be familiar with his or her driving abilities. On the other hand, possession of a leased truck ordinarily passes from the lessor to strangers, who may or may not be who they profess to be and who may allow the truck to be used by family, friends, acquaintances, or strangers. It is common knowledge that the U-Haul operation, and those similar to it, involves the rental of trucks, trailers, etc., to individuals, frequently for use in nonbusiness activities, such as moving household goods to a new home. The lessees may often be persons who have not had previous experience in driving trucks or vehicles heavier than cars, which, because of their weight and bulk, pose a greater danger to those involved in accidents with them. We conclude that there is a reasonable basis to distinguish between a rented truck, and rented and non-rented automobiles, and the distinction is sufficient to support this legislation. There was a "reasonable basis for the particular classification from the point of view of the legislators who had adopted it." See Schwartz, Constitutional Law, § 153, p. 289. It may be that in time the Legislature will see fit to add other classes of rented vehicles to the statute, but the fact that it has taken a "step-by-step" approach in this situation does not make the statute unconstitutional as a denial of equal protection of the laws.

U-Haul's claim that section 39-6,193 was unconstitutionally vague because at the date of the accident it lacked a statutory definition of "truck" is without merit. There has been a statutory definition of "trucks" since 1919. Laws 1919, c. 190, Art. IV, § 1, p. 818; § 60-301, Comp. St. 1929. That section defined "trucks" as including "motor vehicles equipped or used to carry anything other than passengers." An additional definition has since been added, and reads as follows: "Truck shall mean any motor vehicle designed, used, or maintained primarily for the transportation of property." Laws 1973, L.B. 45, § 2; § 39-602 (109), R. R. S.

1943. The word "truck" is a term of common under-standing, and men of normal intelligence would not necessarily have to guess at its meaning nor would they usually differ as to its application. Cramp v. Board of Public Instruction, 368 U. S. 278, 82 S. Ct. 275, 7 L. Ed. 2d 285 (1961); State v. Sullivan, 189 Neb. 465, 203 N. W. 2d 169 (1973), citing Cameron v. Johnson, 390 U. S. 611, 88 S. Ct. 1335, 20 L. Ed. 2d 182 (1968).

A common pickup truck would normally be viewed as falling within the scope of the statute under the defi-nition of "truck." There is also no indication that the Legislature intended to exclude this kind of truck from statutory coverage. Its use is subject to the same dan-gers as that of larger trucks. It is more than likely to be a manual transmission model and will often be loaded with cargo, perhaps inadequately secured, and may be more difficult to handle than a regular automobile.

We hold, therefore, that section 39-6,193 is in all re-spects constitutional and is a valid exercise of the police power of the state by the Legislature. The trial court erred in sustaining defendant U-Haul's demurrer to plaintiff's petition on the ground that the statute was unconstitutional, and the cause is hereby remanded.

While the trial court's sustaining of U-Haul's de-murrer to the applicability and constitutionality of sec-tion 39-6,193 is reversed, Bridgeford may have to amend his petition in conformity with the prerequisites to lia-bility enunciated in this opinion. The identity of and facts showing the liability of both the lessee and oper-ator, if they are separate individuals, must be alleged in the petition to state a cause of action under section 39-6,193.

REVERSED AND REMANDED.