555 A.2d 931

**COMMONWEALTH of Pennsylvania**

v.

**Michael J. RUDINSKI, Appellant.**

Superior Court of Pennsylvania.

Dec. 8, 1988.

Filed Feb. 1, 1989.

Reargument Denied April 3, 1989.

Petition for Allowance of Appeal Denied
Sept. 7, 1989.

John P. Campana, Williamsport, for appellant.

Robert W. Ferrell, Assistant District Attorney, Williamsport, for Com.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

Appellant, Michael J. Rudinski, appeals from a judgment of sentence imposing a fine of $15.00 for violation of a Williamsport city ordinance governing overtime parking and a $15.00 fine for violation of 75 Pa.C.S.A. § 3353(a)(3), parking in restricted areas. Appellant contends that: (1) the trial court erred in refusing to arrest judgment; and (2) the trial court violated appellant's constitutional right to due process. For reasons discussed below, we affirm the determination of the trial court.

On June 1, 1987, in the City of Williamsport, a parking ticket for parking in a restricted zone was issued to appellant's car. Subsequently, law enforcement authorities issued a second parking ticket to appellant's vehicle for overtime parking. When the tickets were not paid, appellant received citations pursuant to Pa.R.Crim.P. 95 which permits law enforcement officials to institute criminal proceedings by issuing a citation following non-payment of a parking ticket. A District Justice found appellant guilty of overtime parking, City Ordinance 521.02, and parking in restricted areas, 75 Pa.C.S.A. § 3353(a)(3). The case was subsequently heard de novo by the trial court, which found appellant guilty of all charges. This appeal follows denial of appellant's motions in arrest of judgment and for new trial.

Appellant claims that the trial court erred in denying his motion in arrest of judgment and denied his right to due process when the Commonwealth did not prove beyond a reasonable doubt the identity of the perpetrator. Appellant contends that because the trial court permitted the Commonwealth to rely upon the presumption that an owner of an automobile parked it, the burden of proof has been unconstitutionally shifted to appellant to establish that he did not park the car. Appellant asserts that the Common-

wealth was required to establish beyond a reasonable doubt: (1) the illegal parking of an automobile, and (2) the identity of the person parking the car; and cites *Commonwealth v. Slaybaugh*, 468 Pa. 618, 364 A.2d 687 (1976), in support of his argument that the presumption that the owner of a vehicle is responsible for parking violations is unconstitutional.

In *Slaybaugh*, our Supreme Court held that 75 P.S. § 1212 (repealed) was unconstitutional. The provision provided in pertinent part:

In any proceeding for a violation of the provisions of this act or any local ordinance, rule or regulation, the registration plate displayed on such vehicle or tractor shall be prima facie evidence that the owner of such vehicle was then operating the same. . . .

75 P.S. § 1212 (repealed). While we agree with the Supreme Court's holding in *Slaybaugh*, it has subsequently been applied exclusively to situations in which the presumption of ownership was used to convict a driver of a moving violation. *See, e.g., Commonwealth v. Leaman*, 255 Pa.Super. 481, 388 A.2d 330 (1978). In our opinion, the distinction between a moving violation and a parking violation is crucial to the resolution of the present matter.

Instantly, two parking tickets were issued to appellant's vehicle. The Commonwealth presented no evidence that appellant actually parked the vehicle himself. Appellant urges that the imposition of liability to the owner without proof that he illegally parked the car violates appellant's constitutional right to due process guaranteed under the United States Constitution. We disagree.

Preliminarily, we acknowledge that in criminal matters, the due process clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). In a series of United States Supreme Court cases, however, the high court carved out an exception to

the general criminal due process considerations in the area of public welfare offenses. In *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), the Supreme Court characterized these regulations as being:

> ... in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize.... The accused, it he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably exact from one who assumed his responsibilities.

*Id.* at 255–256, 72 S.Ct. at 246, 96 L.Ed. at 296–297. "Violations of traffic regulations fall squarely within a proper classification of public welfare offenses." *Iowa City v. Nolan,* 239 N.W.2d 102 (Iowa 1976), *citing* 33 Col.L.Rev. 55, 73, 77.

Because this is an issue of first impression for the appellate courts of this Commonwealth, we find other jurisdictions that have upheld the constitutionality of similar ordinances to be instructive in our disposition of this case. When upholding a Boston ordinance imposing liability for illegal parking on the car owner, the Supreme Court of Massachusetts provided:

> As was pointed out in [*Commonwealth v. Ober,* 286 Mass. 25, 32, 189 N.E. 601, 603], "The inconvenience of keeping watch over parked vehicles to ascertain who in fact operates them would be impracticable, if not impossible, at a time when many vehicles are parked.... [T]he rules and regulations of the Boston Traffic Commission ... were framed and intended to cover and make punishable any violation ... by the owner of any vehicle registered in his name...."

This doctrine is not impaired by *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, or *Lambert v. People of State of California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228, both of which recognize that

many public welfare crimes that require no intent are valid.

The defendant argues that where the penalty is not minor, absence of a scienter requirement may result in a deprivation of property without due process of law.... In the case at bar, the penalty of a fine not exceeding $20 is very definitely minor.... This is but another instance where the penalty is "relatively small, and conviction does no grave damage to an offender's reputation." *Morissette v. United States, supra,* 342 U.S. [at] 256, 72 S.Ct. [at] 246.

*Commonwealth v. Minicost Car Rental, Inc.,* 354 Mass. 746, 242 N.E.2d 411 (1968).

Particularly helpful is the following excerpt from an opinion of the Supreme Court of Missouri:

The purpose of ordinances regulating parking is to permit the public streets to be used to their best advantage by the public. The maximum penalty is a relatively small fine and no potential incarceration. There is not public stigma attached to receiving a parking ticket and it has no effect upon one's driver's license or insurance cost. If the ticket is paid promptly, no court appearance is required. The movement of automobile traffic is a major problem in the cities of this state. Cars illegally parked contribute substantially to that problem and the enforcement of parking regulations is difficult and expensive. Most cars are driven by the owner, some member of the owner's family, or his employee or lessee and with the owner's consent. An ordinance imposing liability for the parking violation fine on the owner as well as the driver may very well result in fewer violations and thereby assist in the reduction of traffic problems.

*City of Kansas City v. Hertz Corp.,* 499 S.W.2d 449, 453 (1973).

The parking prohibitions in the instant case are clearly within a permissible regulation in the interest of permitting the public to use public streets to their best advantage. Moreover, the penalty involved is minor and their is no

public stigma attached to receiving a parking ticket. We find that under the public welfare doctrine, it is clear that *prima facie* strict criminal responsibility may be imposed upon the registered owner of an illegally parked vehicle. Therefore, by proving (1) the existence of an illegally parked vehicle, (2) registered in the name of the defendant, the Commonwealth can make out a *prima facie* case for imposing responsibility for the violation upon the vehicle's owner. *See Iowa City, supra.* This standard, nonetheless, permits an owner to come forward with evidence that someone else was operating his vehicle in order to rebut the inference that the registered owner is responsible for a vehicle's operation. "In the area of public welfare offenses, such burden shifting is not constitutionally infirm." *Id., citing U.S. v. Park,* 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975). We emphasize that the result which appellant advocates would create utter chaos for our municipalities, law enforcement officials and in our court system and, therefore, as a practical matter, we refuse to impose a requirement of identifying the driver in parking violation cases.[1]

1. Moreover, we note that subsequent to *Slaybaugh, supra,* our legislature created 42 Pa.C.S.A. § 6143, which was "substantially a reenactment of [75 P.S. § 1212]." Official Source Note, 42 Pa.C.S.A. § 6143. The new rule was drafted in light of *Slaybaugh* and provided that:

> In any action or proceeding for the recovery of a civil penalty for an infraction of the provisions of any law relating to the ownership or operation of any conveyance by air, land or water or any game or fish law or any local ordinance, rule or regulation relating thereto, the registration number displayed on a conveyance shall sustain any inference that the person to whom the registration number was officially assigned is the owner of the conveyance and was then operating the conveyance.

42 Pa.C.S.A. § 6143(a).

The Rule, therefore, creates an inference that the owner of a vehicle was operating the vehicle for purposes of imposing a civil penalty for infractions of laws or local ordinances relating to the operation of a vehicle. Instantly, a municipality issued parking tickets to appellant's vehicle. Our Rules of Criminal Procedure provide that:

> Political subdivisions may use parking tickets to inform defendants of parking violations and to offer defendants an opportunity to avoid criminal proceedings by paying an amount specified on the ticket. When a political subdivision does use parking tickets and a

The record in the present case indicates that the Commonwealth established that a vehicle registered to appellant was illegally parked on two occasions. Accordingly, based upon the foregoing, we affirm the judgment of sentence.

Judgment of sentence affirmed.

ticket has been handed to a defendant or placed on a vehicle windshield, a criminal proceeding shall be instituted only if the defendant fails to respond as requested on the ticket. In that event, the criminal proceeding shall be instituted by a law enforcement officer filing a citation with the proper issuing authority. Pa.R.Crim.P. 95(a). Important for our disposition, the Comment to Pa.R.Crim.P. 95 proclaims that a parking ticket "[i]s not a citation and does not constitute the instituting of a summary proceeding...." Arguably, the resolution of the instant matter did not become criminal until appellant chose not to pay the parking tickets. Therefore, at the outset, the penalty sought fell within the parameters of 42 Pa.C.S.A. § 6143 and proof needed to establish the parking violations enjoyed the benefit of the inference created by the statute.