STATE OF NEBRASKA, APPELLANT AND CROSS-APPELLEE, V.
LLOYD F. GARBER, APPELLEE AND CROSS-APPELLANT.
545 N.W.2d 75

Filed March 15, 1996.   No. S-95-647.

Joseph M. Casson, Jefferson County Attorney, for appellant.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., and Joseph F. Chilen for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

Finding that the statutes under which the defendant–appellee, Lloyd F. Garber, was charged with two counts of odometer fraud unconstitutionally deprived him of the equal protection of the law guaranteed by U.S. Const. amend. XIV, the district court dismissed the information. The plaintiff–appellant, State of Nebraska, took exception to the ruling, and this court granted the State's application to appeal the aforesaid ruling to this court pursuant to the provisions of Neb. Rev. Stat. §§ 24–1106 and 29–2315.01 (Cum. Supp. 1994). Garber cross–appealed, claiming that the statutes are unconstitutional on other grounds as well as the equal protection ground. Inasmuch as we overrule the State's exception, we concern ourselves only with the State's challenge to the district court's equal protection ruling.

## II. SCOPE OF REVIEW

The alleged unconstitutionality of a statute presents a question of law which must be determined by an appellate court independently from the conclusion reached by the trial court. *State v. Jones*, 248 Neb. 117, 532 N.W.2d 293 (1995); *State v. Stott*, 243 Neb. 967, 503 N.W.2d 822 (1993).

## III. QUESTIONED STATUTES

The statutes under which Garber was charged are Neb. Rev. Stat. §§ 60–132 and 60–133 (Reissue 1993). In relevant part, § 60–132 makes it unlawful to "[k]nowingly tamper with, adjust, alter, change, disconnect, or fail to connect an odometer of a motor vehicle, or cause any of the foregoing to occur, to reflect a mileage different than has actually been driven by such motor vehicle except as provided in section 60–133."

Section 60–133 provides:

If any odometer is repaired or replaced, the reading of the repaired or replaced odometer shall be set at the reading of the odometer repaired or replaced immediately prior to repair or replacement and the adjustment shall not be deemed a violation of [§] 60-132 . . . except that when the repaired or replaced odometer is incapable of registering the same mileage as before such repair or replacement, the repaired or replaced odometer shall be adjusted to read zero and a notice in writing on a form prescribed by the Department of Motor Vehicles shall be attached to the left door frame, or in the case of a motorcycle to the registration certificate and all subsequent registration certificates, of the vehicle by the owner or his or her agent specifying the mileage prior to repair or replacement of the odometer and the date on which it was repaired or replaced and any removal or alteration of such notice so affixed shall be deemed a violation of such sections.

In addition, a number of other statutes also bear on the matter. The first of these is Neb. Rev. Stat. § 60-134 (Reissue 1993), which requires the transferor of a motor vehicle less than 10 years of age which was equipped with an odometer by the manufacturer to provide the transferee with a statement signed by the transferor which sets forth

the mileage on the odometer at the time of transfer and (1) shall state that, to the transferor's best knowledge, such mileage is that actually driven by the motor vehicle, (2) if the transferor has knowledge that the mileage shown on the odometer is in excess of the designated mechanical odometer limit, shall include a statement to that effect, or (3) if the transferor has knowledge that the odometer reading differs from the actual mileage and that the difference is greater than that caused by odometer calibration error, shall state that the odometer reading does not reflect the actual mileage and should not be relied upon. If a discrepancy exists between the odometer reading and the actual mileage, a warning notice to alert the transferee shall be included with the statement.

Neb. Rev. Stat. § 60–301(14) (Reissue 1993), with certain exceptions not relevant to our inquiry, defines a motor vehicle as "any vehicle propelled by any power other than muscular power . . . ." Section 60–301(15) further makes clear that a motorcycle is a motor vehicle.

Neb. Rev. Stat. § 60–302(1) (Reissue 1993) decrees, again with certain exceptions not relevant here, that no motor vehicle "shall be operated or parked on the highways of this state unless such vehicle is registered in accordance with Chapter 60, article 3." It also provides that every owner "of a vehicle required to be registered shall make application for registration . . . . The application shall be a copy of a certificate of title . . . ."

Neb. Rev. Stat. § 60–106(6) (Reissue 1993) requires that one purchasing a motor vehicle obtain a certificate of title. Section 60–106(7) reads, in pertinent part:

> In all cases of transfers of motor vehicles . . . the application for a certificate of title shall be filed within thirty days after the delivery of such vehicle . . . . A licensed dealer need not apply for certificates of title for motor vehicles . . . but upon transfer of such vehicle . . . the licensed dealer shall give the transferee a reassignment of the certificate of title on such vehicle . . . or an assignment of a manufacturer's or importer's certificate.

Neb. Rev. Stat. § 60–312 (Reissue 1993) requires the issuance of a certificate of registration to such an applicant.

Penalties are provided for the violation of §§ 60–132, 60–133, and 60–134, as well as Neb. Rev. Stat. § 60–138 (Reissue 1993), and for operating an unregistered vehicle, in violation of § 60–302(1) and Neb. Rev. Stat. §§ 60–302.03 (Reissue 1993) and 60–348 (Cum. Supp. 1994).

## IV. FACTS

At his arraignment, Garber stood mute, and the court entered a not guilty plea on his behalf. Garber then waived his right to a jury trial, and a bench trial was had, at which the following facts were stipulated:

Garber, a motorcycle dealer, caused one of his employees to switch the odometers on two motorcycles. Because the

odometers were sealed, they could not be altered or reset to zero.

The odometer on the first motorcycle read 102 miles, the actual distance the vehicle had been driven. That motorcycle had been sold and returned by the purchaser because the engine began seeping oil and the turn signal indicators were reversed. No registration certificate had been issued to the purchaser of the first motorcycle. The second motorcycle was identical to the first and had an odometer reading of .5 miles, again, the actual distance that vehicle had been driven. No registration certificate had been issued on this motorcycle.

After the odometers were switched, the second motorcycle was delivered to the purchaser in exchange for the first. The first motorcycle was then returned to Garber's inventory and offered for sale. No notice, as required by § 60–133, was attached to the registration certificate of either motorcycle by Garber because neither of the motorcycles had been registered.

Although not covered by the stipulation, there is no indication in the record that either of the odometers had been damaged or was in need of repair.

## V. ANALYSIS

So far as is relevant to this inquiry, §§ 60–132 and 60–133 make it unlawful to replace a motorcycle odometer such that it gives a mileage reading which is different than the number of miles the motorcycle was actually driven. The statutes require that any replacement odometer be reset to zero and that a notice specifying the actual miles driven and date of replacement be affixed to the registration certificate.

Although in the memorandum accompanying its judgment the district court referred to the rights to both equal protection and due process, it analyzed only whether there was a rational basis for the distinction drawn in the methods of compliance and whether the different methods invidiously discriminate against a motorcycle dealer. These are both elements of the right to equal protection, and for that reason we engage only in an equal protection analysis.

In any equal protection challenge to a statute, the degree of judicial scrutiny to which the statute is to be subjected may be

dispositive. See, *Dallas v. Stanglin*, 490 U.S. 19, 109 S. Ct. 1591, 104 L. Ed. 2d 18 (1989); *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973). If a legislative classification involves either a suspect class or a fundamental right, courts will analyze the statute with strict scrutiny. Under this test, strict congruence must exist between the classification and the statute's purpose. The end the legislature seeks to effectuate must be a compelling state interest, and the means employed in the statute must be such that no less restrictive alternative exists. On the other hand, if a statute involves economic or social legislation not implicating a fundamental right or suspect class, courts will ask only whether a rational relationship exists between a legitimate state interest and the statutory means selected by the legislature to accomplish that end. See, *Vance v. Bradley*, 440 U.S. 93, 99 S. Ct. 939, 59 L. Ed. 2d 171 (1979); *New Orleans v. Dukes*, 427 U.S. 297, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976). Upon a showing that such a rational relationship exists, courts will uphold the legislation. *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985).

The language of §§ 60–132 and 60–133 makes it apparent that in enacting these statutes, the Legislature was concerned with preventing odometer fraud and elected to supplement the notice given in the statement required by § 60–134. Thus, the questioned statutes deal with an economic matter and do not impinge upon a fundamental right or create a suspect classification. We therefore examine the statutes under the rational basis standard of review.

As the U.S. Supreme Court noted in *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970):

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*, 220 U. S. 61, 78. "The problems of government are practical ones and may justify, if they do

not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago*, 228 U. S. 61, 69–70. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U. S. 420, 426.

The Equal Protection Clause does not require a legislature to choose between attacking every aspect of a problem or not attacking it at all; it is sufficient if the action is rationally based and free from invidious discrimination. *Prendergast v. Nelson*, 199 Neb. 97, 256 N.W.2d 657 (1977).

Refined analysis and simplistic logic when applied to the practical impact of a particular classification produces many times an appearance of inequality and discrimination. . . . But the sharpness of the lines drawn does not create an irrationality of classification or an invidious discrimination. This is particularly true when the sword of legislative policy deals with broad problems of economics and social welfare.

*Thompson v. Board of Regents of University of Nebraska*, 187 Neb. 252, 256, 188 N.W.2d 840, 843 (1971). For these reasons, the rational basis standard "is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961). In reviewing the constitutionality of a statute, we do not pass judgment on the wisdom or necessity of the legislation or on whether the statute is based upon assumptions which are scientifically substantiated. *Otto v. Hahn*, 209 Neb. 114, 306 Neb. 587 (1981). It is also to be noted that under the rational basis standard, the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause, a legislature is not required to adopt the best solution; it is sufficient if the solution adopted has some rational relationship to the state's objective. *Dallas v. Stanglin*, 490 U.S. 19, 109 S. Ct. 1591, 104 L. Ed. 2d 18 (1989).

The claimed denial of equal protection arises because under § 60–133, the notice is to be affixed on the left doorframe of motor vehicles other than motorcycles, but in the case of

motorcycles, the notice is to be affixed to the registration certificate.

In order to determine whether there is a rational basis for the distinction § 60-133 draws in the methods of compliance, it becomes necessary to recall the provisions of other statutes. Section 60-106(7) exempts motor vehicle dealers from obtaining certificates of title, the instruments which, under the provisions of § 60-302(1), become the applications for the certificates of registration required for vehicles "operated or parked" on state highways.

Yet, the only means by which motorcycle dealers may comply with the notice requirement of § 60-133 is to register motorcycles on which odometer readings have been changed, irrespective of whether the vehicles are being either operated or parked on state highways. Other motor vehicle dealers may comply with the notice requirement of § 60-133 without registering vehicles which are neither so operated or parked. While the differing physical characteristics of motorcycles and other motor vehicles may justify requiring that the § 60-133 notice be affixed differently on motorcycles than on other motor vehicles, that circumstance cannot be said to provide a rational basis between the State's objective of preventing odometer fraud and the requirement that motorcycle dealers register vehicles under conditions which do not obligate other motor vehicle dealers to do so.

Inasmuch as §§ 60-132 and 60-133 thus offend the Equal Protection Clause of U.S. Const. amend. XIV, the State's exception is overruled.

EXCEPTION OVERRULED.