REQUESTED BY: Senator Pat Engel Nebraska State Legislature
You have requested an opinion from this office regarding the constitutionality of proposed legislation which would enable prosecutorial officials to use photographs taken by intersection cameras to establish civil liability in their cases against violators of red light ordinances. Your correspondence indicates that when similar legislation was discussed in the past, questions arose concerning its constitutionality. Specifically, you inquire as to "whether this legislation could successfully withstand constitutional challenges based on equal protection, due process, or other constitutional provisions." Our response to your inquiry is set forth below.
 PROPOSED LEGISLATION
The proposed legislation would authorize cities to install cameras at intersections to detect red light violators. Several other states, including Arizona, California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maryland, New York and Virginia, have enacted similar laws which authorize the use of photo monitoring systems to enforce traffic light signals. Although many of these laws have been in effect for several years, our research has disclosed no case law challenging the constitutionality of the use of photo monitoring systems to enforce traffic infractions. Moreover, our research disclosed no cases, Attorney General opinions, or law review articles dealing with the subject matter of photo monitoring devices. As a result, our response to your inquiry will be based upon the general constitutional principles of equal protection and due process, and their applicability to the proposed legislation.
The draft copy of the proposed legislation attached to your opinion request would enable prosecutorial officials to use the photographs taken by the intersection cameras to establish civil liability against individuals violating red light ordinances. The legislation would establish a new civil offense infraction, separate and distinct from the violations contained in the Nebraska Rules of the Road, Neb. Rev. Stat. § 60-601 through60-6,374 (1998).
Generally speaking, violators would be subject to monetary penalties, not to exceed $100 per violation. The proposed legislation expressly provides that said violation will not appear on the individual's official driving record, and no points would be assessed against their driver's license. In addition, said individual would not be subject to any other prosecution, criminal or otherwise, associated with said violation. The proposed legislation provides that the owner or the registered lessee of any vehicle found in violation of any ordinance established pursuant thereto, would be liable for the established fine unless otherwise ordered by the court.
The notice of violation would be mailed to the registered owner/lessee accompanied by a copy of any photographic evidence obtained of the violation. The notice would also instruct the liable party on the process for paying the civil penalty, and would further inform said party on the process for contesting the violation. In the event the registered owner was not the driver at the time of the violation, the legislation provides that said owner may bring a civil action against the actual driver for indemnification.
 STANDARD OF REVIEW
Since your opinion request pertains to potential constitutional challenges to the proposed legislation, we note that a statute is presumed to be constitutional and all reasonable doubts regarding constitutionality should be resolved in favor of its validity. Callan v. Balka, 248 Neb. 469, 481,536 N.W.2d 47, 54 (1995). If a challenged statute is susceptible to more than one reasonable construction, a court uses the construction that will achieve the statutes purpose and preserve its validity. Id. The party asserting the unconstitutionality of a statute has the burden of overcoming this presumption by clearly demonstrating that the statute is unconstitutional.State v. Popco, Inc., 247 Neb. 440, 442, 528 N.W.2d 281, 283
(1995).
 ANALYSIS
A. Due Process
Your opinion request inquires as to whether the proposed legislation could successfully withstand a constitutional challenge based on due process. Although not specified in your request, we assume you refer to the guarantee contained in Neb. Const. Art. I, § 3, that no person shall be deprived of property "without due process of law," or the like guarantee embodied in U.S. Const. Amend. XIV.
Due Process embodies two distinct principles of constitutional protection, those being procedural due process and substantive due process. A basic and fundamental requirement of procedural due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to be heard and to present any defense to the charges levied against them. State exrel. Labedz v. Beermann, 229 Neb. 657, 663, 428 N.W.2d 608, 618
(1988); McAllister v. McAllister, 228 Neb. 314, 422 N.W.2d 345
(1988).
However, due process does not guarantee to a citizen of the state any particular form or method of state procedure. Hroch v.City of Omaha, 226 Neb. 589, 591,413 N.W.2d 287, 288 (1987). The requirements of procedural due process are satisfied if an individual charged with a violation of law has reasonable notice and a reasonable opportunity to be heard, so as to enable such individual to present his claim or defense, due regard being had to the nature of the proceedings and the character of the rights that may be affected by them.Id.
We note that the proposed legislation provides an individual charged with a violation thereunder, with the opportunity to contest the notice of infraction in county court. We therefore assume that said individual will be afforded adequate notice and a reasonable opportunity to be heard, thereby satisfying any procedural due process concerns.
With respect to substantive due process, the primary purpose of this constitutional guarantee is security of the individual from the arbitrary exercise of the powers of government unrestrained by the established principles of private rights and distributive justice. Rein v. Johnson, 149 Neb. 67, 82,30 N.W.2d 548, 557 (1947).
 As related to legislation, it is generally held that due process is satisfied if the legislature had the power to act on the subject matter, if that power was not exercised in an arbitrary, capricious, or unreasonably discriminatory manner, and if the act, being definite had a reasonable relationship to a proper legislative purpose. In other words, if an act of the Legislature is authorized and promulgated by the inherent and reserved constitutional powers of the state, and is enforced with due regard to and observance of the rules established by our system of jurisprudence for the security of life, liberty, and property, it is not in conflict with due process of law.
Rein, 149 Neb. at 82, 30 N.W.2d at 557, 558. Generally, statutes which are reasonably designed to protect the public safety, health, morals, and general welfare do not violate the constitutional principle of due process, where the statute operates uniformly on all within a class which is reasonable.Central Markets West, Inc. v. State, 186 Neb. 79, 81,180 N.W.2d 880, 882 (1970). Moreover, the extent to which the legislature may exercise its police power is primarily a matter of legislative judgment, with the proviso that the purpose of the regulatory matter must be legitimate and the means employed to effectuate it must be reasonable. Bridgeford v. U-Haul, Co.,195 Neb. 308, 316, 238 N.W.2d 443, 449 (1976).
Based on the foregoing, our initial focus is on whether the legislature has the power to act on the subject matter contained in the proposed legislation. In Nebraska, it is well established that the legislature has the inherent power to establish, maintain, and control the roadways of the state. Herman v. Lee,210 Neb. 563, 566, 316 N.W.2d 56, 59 (1982). Furthermore, there is "no doubt" that the state may protect the health, safety and welfare of the general public by enacting legislation designed to increase highway safety. Bridgeford, 195 Neb. at 316,238 N.W.2d at 449. The proposed legislation pertains to the regulation of motor vehicle traffic, specifically the authorized use of intersection cameras to detect red light violators. Said legislation would therefore appear to fall within the permissible scope and power of the legislature to control the roadways of the state.
Secondly, the proposed legislation must be rationally related to a legitimate state interest. The court in OmahaParking Authority v. City of Omaha, 163 Neb. 97, 77 N.W.2d 862
(1956) held that legislation designed to facilitate and make safe the use of the state's highways and byways serves a legitimate state interest. Id. at 105-106, 77 N.W.2d at 869. Such matters are subject to the superior control of the state, except where prohibited by the Constitution. Id. It is our opinion that the proposed legislation has a reasonable relationship to the legitimate state interest of addressing the hazards presented by individuals who disregard red lights, thereby endangering the lives of the citizens of this state.
Furthermore, authorizing prosecutors to establish a prima facie case for imposing liability for the red light violation against the "owner or registered lessee" would appear to be a proper exercise of the state's police power.
In Bridgeford, the court held that:
 The imposition of strict liability, in the exercise of police power of a state, does not of itself contravene the due process clauses of the federal [and] state Constitutions. . . . Legislation imposing liability without fault is frequently sustained as a proper exercise of the police power. . . . The extent to which the Legislature may exercise the police power, an attribute of state sovereignty, is primarily a matter of legislative judgment, but the purpose of the regulatory matter must be legitimate [sic] and the means employed to effect it must be reasonable. . . . Nebraska has, both by legislation and court decision, approved the principles of strict liability and vicarious liability in its workman's compensation statutes, judicial application of the family purpose doctrine, and defective product cases.
Bridgeford, 195 Neb. at 312-14, 238 N.W.2d at 447-48(citations omitted). The Court reasoned that a statute imposing unlimited vicarious liability on owners/lessors of trucks for damages negligently caused by the lessee's and operators of the trucks, was a reasonable means of increasing highway safety, and therefore, did not deprive the truck owners/lessors of their property without due process. Id. at 316-17, 238 N.W.2d at 449.
Similarly, although our research failed to uncover any Nebraska case law on the subject, various other jurisdictions have held that imposing prima facie strict responsibility upon the registered owner of an illegally parked vehicle does not violate due process. See Iowa City v. Nolan, 239 N.W.2d 102
(1976) (a registered owner may be vicariously liable for his illegally parked vehicle and subject to punishment pursuant to a public welfare regulation); Commonwealth v. Rudinski, 382 Pa. Super. 462, 55 A.2d 931 (1998) (under public welfare doctrine, prima facie strict responsibility may be imposed upon the registered owner of an illegally parked vehicle).
Although we are unable to identify with any certainty each and every potential due process argument contesting the constitutionality of the proposed legislation, based on the foregoing authority, it is our opinion that said legislation could withstand such a constitutional challenge.
B. Equal Protection
Your opinion request also inquires as to whether the proposed legislation could successfully withstand a constitutional challenge based on equal protection. Once again, we assume for purposes of our response that you refer to Neb. Const. Art. I, § 3, Neb. Const. Art. III, § 18 and U.S. Const. Amend. XIV.
In 1998, Art. I, § 3 of the Nebraska Constitution was amended so as to include language that no person shall "be denied equal protection of the laws." Although the Nebraska Supreme Court has yet to rule on the interpretation of this particular constitutional provision, in the absence of contrary case law, we assume for the purposes of this opinion that the rights granted thereunder are similar to those derived from thefourteenth amendment to the U.S. Constitution, and those derived from Art.III, § 18 of the Nebraska Constitution.
Article III, § 18 of the Nebraska Constitution provides that "[t]he legislature shall not pass local or special laws in any of the following cases, that is to say: . . . Granting to any corporation, association, or individual any special or exclusive privileges, immunities, or franchise. . . . In all other cases where a general law can be made applicable, no special law shall be enacted."
In construing Article III, § 18, the Nebraska Supreme Court has determined that "[b]y definition, a legislative act is general, and not special, if it operates alike on all persons of a class or on persons who are brought within the relations and circumstances provided for. . . ." Haman v. Marsh,237 Neb. 699, 709, 467 N.W.2d 836, 844 (1991) (citations omitted); Stateex rel. Rogers v. Swanson, 192 Neb. 125, 219 N.W.2d 726 (1974). Thus, a legislative act can violate Neb. Const. Art. III, § 18 as special legislation in one of two ways: (1) by creating a totally arbitrary and unreasonable method of classification, or (2) by creating a permanently closed class. Swanson v. State,249 Neb. 466, 479, 544 N.W.2d 333, 342 (1996); City of Scottsbluff v.Tiemann, 185 Neb. 256, 175 N.W.2d 74 (1970).
Similar to the state equal protection clause is the provision contained in the fourteenth amendment to the U.S. Constitution. In pertinent part, the fourteenth amendment prohibits the State from denying "to any person within its jurisdiction the equal protection of the laws." When a statute is challenged under this clause, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Cleburne v. Cleburne Living Center,Inc., 473 U.S. 432, 440 (1985); Pick v. Nelson, 247 Neb. 487,528 N.W.2d 309 (1995); Robotham v. State, 241 Neb. 379,488 N.W.2d 533 (1992).
 There are two narrow exceptions to this rule. Statutes which classify by race, alienage or national origin `will be sustained only if they are suitably tailored to serve a compelling state interest.' Likewise, statutes which classify by gender or illegitimacy must be `substantially related' to, respectively, either a `sufficiently important governmental interest' or `a legitimate state interest.'
Pick, 247 Neb. at 498, 528 N.W.2d at 318 (citations omitted). The Nebraska Supreme Court has expressly determined that "[t]he Nebraska Constitution and the U.S. Constitution have identical requirements for equal protection challenges." Id. See alsoRobotham, 241 Neb. at 385, 488 N.W.2d at 539. In an equal protection challenge pursuant to Article III, § 18 of the Nebraska Constitution, "classifications that do not involve a suspect class or fundamental right are tested for rational basis." Haman, 237 Neb. at 712, 467 N.W.2d at 846. Thus, in order to test the validity of the proposed legislation, we must initially determine whether it involves a fundamental right or suspect class.
The Nebraska Supreme Court has held that driving is not a fundamental right, and that drivers are not a suspect class.State v. Michalski, 221 Neb. 380, 385, 377 N.W.2d 510, 515
(1985). See also Robotham, 241 Neb. at 385-385,488 N.W.2d at 539-540 (motorcycle ridership is not a suspect class, nor does it involve a fundamental right). As a result, the proposed legislation should withstand a constitutional challenge based on equal protection if it can be demonstrated that said legislation is rationally related to a legitimate state interest.
In attempting to articulate a potential equal protection argument contesting the constitutionality of the proposed legislation, we have been able to come up with only one possible scenario. It is possible that an argument could be made that the proposed legislation results in the improper classification of two types of violators of red light traffic signals. The first being an individual who is ticketed by a police officer who actually sees the red light violation, and the other being an individual whose violation of a red light traffic signal is photographed by an intersection camera authorized under the proposed legislation.
In the first instance, an individual who is ticketed by a police officer who actually witnesses the red light violation, is subject to criminal penalties, and if convicted, the violation would be made a part of their permanent driving record, and would further result in the loss of points against their driver's license.
The second classification, an individual ticketed with a civil traffic violation resulting from photographic evidence obtained from an intersection camera, would not be subject to criminal prosecution, nor would said violation be made a part of their permanent driving record, and further, no points would be assessed against their driver's license.
Based on the foregoing scenario, it could be argued that the proposed legislation improperly creates two distinct classifications of red light violators. In order to be valid, the state would be required to demonstrate that the proposed classification of red light violators ticketed by way of photographic evidence obtained from an intersection camera is rationally related to a legitimate state interest.
Generally, the determination of whether a particular legislative classification has a legitimate public purpose is a decision left to the legislature. See State v. Gaylen,221 Neb. 497, 504, 378 N.W.2d 182,187 (1985). Furthermore, states are usually afforded wide latitude in providing for different treatment of different classes of people. Stoehr v. Whipple,405 F. Supp. 1249 (D. Neb. 1976). "Classifications appearing in social or economic legislation require only a rational relationship between the state's legitimate interest and the means selected to accomplish that end. The ends-means fit need not be perfect; it need only be rational." State v. Michalski,221 Neb. 380, 389, 377 N.W.2d 510, 517 (1985). See alsoDistinctive Printing and Packaging, Co. v. Cox, 232 Neb. 846,443 N.W.2d 566 (1989).
In State v. Garber, 249 Neb. 648, 545 N.W.2d 75 (1996), the Nebraska Supreme Court noted that when reviewing the constitutionality of a statute, it does not pass judgment on the wisdom or necessity of the legislation. Id. at 654,545 N.W.2d at 79. The Court further noted that "under the rational basis standard, the most relaxed and tolerated form of judicial scrutiny under the Equal Protection Clause, a legislature is not required to adopt the best solution; it is sufficient if the solution adopted has some rational relationship to the state's objective." Id.
Given these standards, it is our opinion that the proposed legislation could successfully withstand a constitutional challenge based on equal protection. Although the public purpose of the proposed legislation is not set forth therein, it is apparent that the proposed legislation seeks to reduce the obvious hazards associated with vehicles running through red lights.
Although it could be argued that an individual charged with a violation under the proposed legislation is subjected to lesser penalties than an individual charged pursuant to being stopped by a police officer, there appears to be a rational basis for the imposition of these varying penalties. When an officer pulls over a vehicle for a red light violation, he actually witnesses the violation and is able to determine the identity of the individual operating the vehicle by reviewing the individual's drivers license. In addition, at this time, the officer prepares a citation regarding the violation, thereby immediately apprising the individual charged with such information as the date, time, and place of the hearing on the violation. The foregoing items are important from a constitutional standpoint, so as to insure that an individual charged with a criminal offense is afforded the opportunity to confront his or her accuser, and further, to afford the individual charged with the right to a speedy trial.
To the contrary, those charged with a violation of a red light ordinance under the proposed legislation would be subjected only to a civil penalty. The rational basis for this lesser penalty is the fact that the violation arises from photographs taken by an intersection camera as opposed to a police officer actually witnessing the violation. Furthermore, due to the fact that an officer is not present, the driver of the vehicle depicted in the photograph is not immediately identified, nor is the citation issued to the driver on the precise day of the violation. These factors contribute to the finding that there is a rational basis for imposing a lesser civil penalty on an individual charged with a violation of a red light ordinance authorized by the proposed legislation. As set forth above, classifications appearing in social or public welfare legislation merely require a rational relationship between the state's legitimate interest and the means selected to accomplish that end. Michalski, 221 Neb. at 389, 377 N.W.2d at 517; Garber,249 Neb. at 654, 545 N.W.2d at 79.
We believe that it would be difficult for any opponent of the proposed legislation to articulate a viable constitutional argument challenging the proposed legislation on the grounds that the purported classification does not have a rational relationship to the legitimate state interest of increasing intersection safety. Rather than placing an officer at the intersection full time, the red light intersection camera serves as a twenty-four hour deterrent for running a red light. The intersection camera also provides a safe, quick, cost effective, and efficient means of dealing with the hazards of individuals running red lights. With no stop involved, the officer is not at risk from passing traffic or armed violators.
Furthermore, not only will the streets be safer after implementation of the red light intersection camera system, but police officers are freed from time consuming traffic stops and have more time to attend to higher priority duties. In addition, under the proposed legislation, violations of red light traffic signals are enforced without discrimination, and safety and efficiency should be increased by reducing the number of potential high speed chases and the number of personnel required for traffic accident clean up, investigation, and court testimony.
 CONCLUSION
In conclusion, it is our opinion that the proposed legislation authorizing the use of intersection cameras to photograph violators of red light ordinances could successfully withstand constitutional challenges based on due process and equal protection.
Sincerely,
 DON STENBERG Attorney General
 Thomas J. Olsen Assistant Attorney General
Approved:
DON STENBERG
Attorney General
pc: Patrick J. O'Donnell Clerk of the Legislature